**SALT LAKE COUNTY, a body politic and corporate, Plaintiff-Appellant,**

v.

**MURRAY CITY REDEVELOPMENT and Murray City, a municipal corporation, Vaughn Soffe, Jack Demann and Jack Fitts, Defendants-Respondents.**

No. 15755.

Supreme Court of Utah.

July 27, 1979.

Theodore L. Cannon, Salt Lake County Atty., Bill Thomas Peters, Deputy County Atty., Salt Lake City, for plaintiff-appellant.

H. Craig Hall, City Atty., Murray, Merrill G. Hansen, Steven F. Alder, Salt Lake City, for defendants-respondents.

WILKINS, Justice:

This appeal arose from an action challenging the validity of a redevelopment plan (the "Plan") adopted by Defendant Murray City. Plaintiff appeals from two summary judgments granted in favor of defendants. The first one upheld the constitutionality of the Utah Neighborhood Development Act, (the "Act"), Utah Code Annotated (1953), as amended, Sec. 11–19–1 *et seq.*,[1] and the second one upheld the validity of the ordinance enacted by Defendant Murray City (the "City") to implement its redevelopment plan and agency.

On June 1, 1976, the Murray City Commission adopted a preliminary redevelopment plan for two areas in the downtown business district it had determined to be "blighted". This determination was based upon a study made and published in 1974 covering part of one of the project areas, a letter from the director of the Murray City Redevelopment Agency (the "Agency") citing sanitary and building code violations on two properties in the project areas, letters citing statistics of higher crime rates in the areas and the minutes of a Murray City Commission meeting outlining a presentation made by a planning consultant concerning the 1974 study.

The Agency approved the plan on July 1, 1976, and on July 20, 1976, notice of hearings to be held on August 23 and 24, 1976, on the redevelopment projects was published in the *Murray Eagle*, a local newspaper. No hearings were held on August 23 and 24, 1976, but on August 27, August 31, September 2, and September 6, 1976, notice of hearings to be held on September 6 and 8, 1976, was published in the *Salt Lake Tribune*. At a meeting held on September 8, 1976, the Murray City Board of Commissioners enacted an ordinance adopting the Plan.

Plaintiff did not appear at the hearings or file written objections to the Plan, but on October 8, 1976, it filed a complaint in the District Court of Salt Lake County challenging the constitutionality of the Act and charging that the Plan and the ordinance adopting it are not in conformity with that Act.

Defendants' first motion for summary judgment was granted on September 1,

1. All statutory references are to Utah Code Annotated (1953), as amended.

1977, on all constitutional challenges and on all other issues but two: whether there was sufficient evidence of blight upon which the Agency could base its determination that blight existed in the project area, and whether the boundaries of the project area, as adopted, comported with the description given in the Plan and the public notice.

On March 7, 1978, the District Court awarded summary judgment to defendants, ruling that there was sufficient evidence upon which defendants made their determination of blight in the project area, and that the issue of boundary description was not properly raised by the pleadings and, therefore, not properly before the Court. On appeal, plaintiff seeks reversal of the summary judgments and defendants seek an order from this Court requiring plaintiff to disburse tax-increment funds for the project area to the Agency.

We shall consider the summary judgments in the order in which they were granted. The first summary judgment, granted on September 1, 1977, disposed of the four causes of action raising constitutional issues in plaintiff's complaint. Plaintiff contends that the issues were first, that the Act violates Article VI, Section 29 [2] of the Utah Constitution, which disallows the Legislature to "delegate to any special commission . . . any power to make, supervise or interfere with any municipal improvement, money, property or effects . . . to levy taxes . . . or to perform any municipal functions," the Agency being, in effect, a "special commission"; second, that Section 11–19–29 [3] violates Article VI, Section 31 [4] of the Utah Constitution, which disallows the Legislature from authorizing ". . . the State or any county, city, town, township, district or other political subdivision of the State to lend its credit . . . in aid of any railroad, telegraph or other private individual or corporate en-

terprise or undertaking," thus enhancing the wealth of private individuals at the expense of the general public; third, that Section 11–19–29 violates Article XIII, Section 5, of the Utah Constitution, which disallows the Legislature from imposing" . . . taxes for the purpose of any county, city, town or other municipal corporation but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation" because improvements made in Murray City should be paid for by that city, and because plaintiff allegedly will be forced to increase its mill levy to compensate for the loss of its incremental ad valorem taxes; and fourth, that Section 11–19–29 violates Article XIII, Section 10, of the Utah Constitution, which provides that "All corporations or persons in this State or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax" because plaintiff will be deprived of the incremental ad valorem taxes which would normally accrue to it from the businesses located in the redevelopment area, those taxes instead accruing to Murray City.

■ The District Court correctly disposed of these four issues. The constitutionality of the Act was successfully tested before this Court in *Tribe v. Salt Lake City Corporation*.[5] In that case, this Court held, specifically, that the Salt Lake City Redevelopment Agency was not a special commission.

It appears clear that the Agency here concerned is a quasi-municipal corporation, and not a special commission. A quasi-municipal corporation has been defined as a public agency created by the legislature to aid the state in some public

---

**2.** Incorrectly cited as Article VI, Section 28.

**3.** Section 11–19–29 provides that taxes levied on property subject to redevelopment shall be distributed first to the taxing governmental agency in the amount and proportion that would be paid had no redevelopment plan been adopted, and second, any excess to a special

fund of the redevelopment agency to retire the bonds used to finance the redevelopment project.

**4.** Incorrectly cited as Article VI, Section 29.

**5.** Utah, 540 P.2d 499 (1975).

work for the general welfare, other than to perform as another community government. [Citation] A municipal corporation is a body politic and corporate, created to administer the internal concerns of the district embraced within its corporate limits, in matters peculiar to such place and not common to the state at large. A special commission is some body or group separate and distinct from municipal government.[6]

This Court also held that no city debt was created contrary to Article XIV, Sections 3 and 4, and that the bonds constituted no lending of the city's credit.[7] Section 11–19–25, relied upon by this Court in *Tribe*, provides that the bonds and obligations of the Agency are not debts of the community (defined in the Act as a city, county, or both), the State or any of the political subdivisions of the State, and that because the bondholders can look only to revenues generated from taxes allocated pursuant to Section 11–19–29 and, in appropriate cases, from operation of the redeveloped property, there is no lending of the community's, the State's or the county's credit to finance the redevelopment project. In its first two causes of action asserting constitutional issues, plaintiff raises those precise questions which were decided by this Court in *Tribe* in 1975.

Although *Tribe* did hold that Section 11–19–29 did not offend Article XIII, Section 5 of the Utah Constitution in that the tax revenue of a municipality may be applied to uses other than those for which the taxes were levied, plaintiff here contends that the statute authorizes the diversion of assessed taxes, which, under Article XIII, Section 5 would normally accrue to the benefit of the County, from the County to Murray City. Plaintiff argues that Defendant Murray City will be the beneficiary of this redevelopment, and that Section 11–19–29 will shift the burden of paying for the improvements from defendant to Salt Lake County as a whole. Plaintiff asserts that it will be forced to increase its mill levy to compensate for the lost revenues, and that this constitutes a legislative imposition of taxes on Plaintiff County's residents for Defendant City's purposes, contrary to the intent and language of Article XIII, Section 5.

However, it should be noted that Salt Lake County will not lose its vested authority to "collect taxes for all purposes of such corporation" as provided in Article XIII, Section 5. Salt Lake County will not even be subordinated to the redevelopment agency in the collection of the taxes. It will be held to the amount and proportion of tax revenues that it would have received had no redevelopment plan been adopted, and that amount will remain static for that period of time during which the bonds of redevelopment are being retired.[8]

Further, in *Tribe*, this Court held that the redevelopment agency is an arm of the State government, designed for State purposes, with powers granted by the Legislature separate and distinct from the municipality within whose territory it may be established. The Agency benefits the public at large by alleviating urban blight, which was also recognized by this Court in *Tribe* as a problem of statewide, not merely local concern.

The concept of redevelopment was enacted by the state legislature, its area of operation is statewide, and deals with a statewide problem, viz., blight. To be sure, the present project area would appear to have only local operation, but it must be remembered that it is a local

6. *Id.* at 502.

7. *Id.* at 503.

8. If, for example, in year one property which later becomes subject to redevelopment is assessed and taxed at a rate equal to $100 per year, and in the years two through five that property is subject to a redevelopment plan, during those years two through five, and thereafter until the redevelopment bonds are retired, Salt Lake County will be held to its $100 per year levy. After the period of redevelopment and repayment of the bonds, the property will be reassessed, and, due to the redevelopment, theoretically will have a higher assessment value than it would have had had no redevelopment taken place. This in turn will supposedly generate higher future tax revenues for Salt Lake County.

operation of an act of general statewide scope; and that its local operation hinges on a contingency—the decision of the legislative body of the Agency. A decision motivated by the existence of a condition of statewide concern.[9]

As redevelopment inures to the benefit of the public generally, the public may be charged for its benefits through general taxation.

The problem of "urban blight" we recognize as one of statewide concern, and not merely a local or municipal problem. . .

Since it is a quasi-municipal corporation, formed for public purposes, it is within the discretion of the legislature to grant it any powers, not expressly prohibited by the constitution, to further such purposes, including the power of taxation. The public purposes for which the agency is organized inures to the benefit of the public generally, therefore the public may be charged for such benefits through general taxation.[10]

Because improvements benefit the general population of the State, those improvements should be paid for through taxation of that general population and not, as Plaintiff Salt Lake County maintains, solely by Murray City. Plaintiff is simply incorrect when it says that it will be deprived of its taxes which will only benefit Murray City and that Section 11–19–29 violates Article XIII, Section 5 of the Utah Constitution. As a matter of fact, and as a matter of law, Plaintiff Salt Lake County is not being deprived of its "power to assess and collect taxes for all purposes of such corporation."

Plaintiff's final issue of constitutionality, raised in its complaint, is that Section 11–19–29 violates Article XIII, Section 10 of the Utah Constitution because plaintiff is not assured of gaining the full value of each of its tax resources within its jurisdiction consistent with the intent of Article XIII, Section 10. An accurate reading of Article XIII, Section 10 depicts a taxation scheme designed to benefit entities including, but not limited to, the counties of this State. It states that:

All corporations or persons in this State, or doing business herein, shall be subject to taxation for *State, County*, School, Municipal *or other purposes*, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax. [Emphasis added.]

Section 11–19–29 merely follows the mandate of Article XIII, Section 10 because it allows for taxation by an agency of the State in order to further the public purpose of ameliorating urban blight.

For Plaintiff Salt Lake County to claim that another taxing entity cannot also assess that property, or portion of it, which is situated "within the Territorial limits" of plaintiff would imply a sovereignty to it not intended by the framers of our Constitution. Just as a city's territorial limits are within a county's, a redevelopment agency's territorial limits may lie within the boundaries of other political subdivisions. Under the system of taxation in effect in this State, taxes collected from any piece of property are allocated among those governmental entities claiming an interest in the revenues. Clearly, the intent of Article XIII, Section 10 would be frustrated were an agency of the State not allowed to tax property within its territorial limits.

We next address the second summary judgment in this case, granted March 7, 1978, on the issues reserved for trial in the first summary judgment, and the other issues raised by the parties in their briefs on appeal.

Section 11–19–16 states:

Notice of the public hearing on a project area redevelopment plan shall be given by publication not less than once a week for four successive weeks in a newspaper of general circulation published in the county in which the land lies. The notice shall:

---

**9.** *Id.* at 502.

**10.** *Id.* at 503.

(1) Describe specifically the boundaries of the proposed redevelopment project area; and

(2) State the day, hour and place when and where any and all persons having any objections to the proposed project area redevelopment plan or who deny the existence of blight in the proposed project area, or the regularity of any of the prior proceedings, may appear before the legislative body and show cause why the proposed plan should not be adopted.

We note that plaintiff first challenged the notice of hearings on the ordinance establishing the City's redevelopment plan in its memorandum in support of its motion for summary judgment. As noted previously in this opinion, notice was published on July 20, 1976, announcing hearings on August 23 and 24, 1976, which were never held. The record contains no subsequent publication postponing those hearings, but notice of hearings to be held September 6 and 8, 1976, was published on August 27, August 31, September 2 and September 6, 1976. The ordinance establishing the Plan and the Agency was adopted on September 8, the last date of the hearings. The March 7, 1978 summary judgment did not specifically address the notice issue, but purported to rule on all issues which were properly before the District Court not previously ruled upon in the first summary judgment.

■ On appeal, where the notice issue is vigorously challenged by plaintiff, defendants' position is that substantial compliance with the notice provisions of the Act is sufficient. Defendants rely on a series of New Mexico cases originating with *Dewitz v. Joyce-Pruitt Co.*[11] *Dewitz* and its progeny developed into a rule that strict compliance with all statutory formalities in foreclosure sales is not necessary, and that if the notice substantially complied with the statute, the action taken pursuant to that notice would be immune from attack on that basis. Even if we were to adopt defendants' position, the publication in this case could not be deemed to substantially comply with Section 11–19–16. Defendants urge this Court to consider the July 20, 1976 publication as part of that notice required to comply with the statute. Under this analysis, notice would have been given five times over a period of seven weeks. Defendants neglect to inform this Court, however, that the July 20 notice was for a hearing which was never held, leaving only four notices spread over an eleven-day period to satisfy the statute. This does not rise even to substantial compliance as Section 11–19–16 states that notice shall be given ". . . not less than once a week for *four* successive weeks . . . ." (Emphasis added.)

■ Rather, because redevelopment is a serious action that may be in derogation of individual property rights, we hold that strict compliance with the enabling legislation is required to enact an ordinance setting up a redevelopment plan and agency. Section 11–19–21 of the Act delegated the State's inherent power of eminent domain to the agencies, and language in defendant's plan anticipates, of course, the use of that power. While the Act is broad in scope and must be interpreted to delegate to the agencies ample power to serve the purposes of the Act, i. e., to alleviate blight, it is necessary that the legislation enabling this grant of authority be strictly followed.

Where property is sought to be appropriated by condemnation proceedings, notice must be given to the property owners and, of course, the notice must be sufficient. Its purpose is to permit owners an opportunity to be heard and if such notice and opportunity to be heard is not given it may result that the proceedings are void, or that those not notified are not bound by the proceedings. If a statute or charter provision fixes the contents of the notice, such provision should be strictly followed. . . .

Where notice of proceedings to take property for public use is required, the giving of such notice is jurisdictional . . .

\* \* \* \* \* \*

11. 20 N.M. 572, 151 P. 237 (1915).

Statutes generally prescribe the procedure by which the right of eminent domain may be exercised. Unless it is otherwise provided, these statutes are to be construed strictly and the material requirements of the statute as to procedure must be strictly followed or, at least, observed with a reasonable degree of strictness. The record must disclose due observance of all jurisdictional requirements, and omissions cannot be supplied by intendment or implication. It must affirmatively appear on the face of the proceedings that every essential prerequisite of the law conferring jurisdiction has been observed in substance, otherwise the proceedings will be void.[12]

In *Town of Tremonton v. Johnson,*[13] this Court stated:

The general rule is that, where the statute prescribes the procedure or steps to be taken by a municipal corporation in exercising the right of eminent domain, the procedure prescribed by the statute becomes a matter of substance, and must be strictly followed by the condemnor as against the owner of the property sought to be condemned. It is further held that, where the statute prescribes certain steps to be taken before initiating condemnation proceedings, such steps are jurisdictional, and may not be disregarded.

In *Vreeland v. Jersey City,* 54 N.J.Law 49, 22 A. 1052, the Court states the rule in the following words:

"Statutes conferring the power of condemnation under the right of eminent domain are strictly construed. Every condition prescribed by the Legislature in

the grant must be complied with, and the proceedings to condemn must be conducted in the manner and with the formalities prescribed in the grant of power. Formalities and modes of procedure prescribed are of the essence of the grant, which the courts cannot disregard on a conception that they are not essential."[14]

Justice Wolfe, in *In re Phillips Estate,*[15] stated that notice in compliance with the statute was a "condition to jurisdiction" in probate. He wrote:

The law did not intend that a mere obeisance should be done to the obligation of providing the world with notice when jurisdiction itself depended upon such notice. The notice is highly substantive and not conventional; it is intended not only to give notice to parties interested, but to raise a notoriety which through the common concourse of mankind might reach persons interested.[16]

■ Interpreting a statute requiring that, as here, notice be published once a week for four successive weeks, Justice Wolfe stated that "successive weeks" meant "successive weeks commencing with a Sunday after the first week commencing with a Sunday in which the first publication appeared."[17] Applied to the facts of this case, since the first publication appeared on Friday, August 27, the "first week commencing with a Sunday" began on August 22. The second successive week began on August 29, the third on September 5, and the fourth on September 12. No notice was published during the week beginning on Sunday, September 12, and, additionally,

---

**12.** 11 McQuillin, Mun.Corp. Secs. 32.124, 32.119 (3rd Ed., 1977). *See also, Hart v. Bayless Investment & Trading Company,* 86 Ariz. 379, 346 P.2d 1101 (1959), wherein it is stated:

This Court has held that, where a jurisdictional notice is required to be given in a certain manner, any means other than that prescribed is ineffective. [Citations] This is so even though the intended recipient of that notice does in fact acquire the knowledge contemplated by the law. Such a rule is no mere "legal technicality"; rather it is a fundamental safeguard assuring each citizen that he will be afforded due process of law. Nor may the requirement be relaxed merely

because of a showing that certain complaining parties did have actual notice of the proceeding.

**13.** 49 Utah 307, 164 P. 190 (1917).

**14.** *Id.* at 49 Utah 310, 164 P. 191. *See also Town of Perry v. Thomas,* 82 Utah 159, 22 P.2d 343 (1933).

**15.** 86 Utah 358, 44 P.2d 699 (1935).

**16.** *Id.* at 86 Utah 367, 44 P.2d 703.

**17.** *Id.* at 86 Utah 370, 44 P.2d 704.

**1346**

the hearing commenced on the *very* day the last notice was published. We hold that strict compliance with the enabling legislation, including Section 11–19–16, is jurisdictional to the correct enactment of an ordinance setting up a redevelopment agency and plan and hence we agree with plaintiff's argument that the ordinance was not validly adopted.

In this rapidly moving age we must remain sensitive to the need for *strict* compliance with the statute concerning notice (which has constitutional dimensions though the issue of constitutionality does not have to be reached here) in order to protect private property rights, which are of fundamental importance.

Our ruling that the notice here is defective is substantially dispositive of all issues raised in the summary judgment of March, 1978. We address the other remaining matters briefly, however.

■ The failure to have an evidentiary hearing on factual matters concerning the issue of blight, notwithstanding motions by both parties contending that there were no factual matters left for resolution, was error. The question of whether the statistics on the condition of the buildings in the project area indicated enough deterioration to warrant a "blight" determination is factual, and an evidentiary hearing was needed.

We note that Section 11–19–10 requires "a preliminary plan for the redevelopment of each project area in co-operation with the planning commission of the community," and that Section 11–19–12 states that "the agency shall prepare . . . a redevelopment plan for each project area . . . ." In this case, defendant prepared a single plan for both project areas. We also note, upon review of the exhibits, the dearth of evidence to support the redevelopment plan in project area # 2, which we feel also constitutes error.

Reversed. No costs are awarded.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.