Eva C. JOHNSON, C. Eugene Croxford, Burton J. Arrington, Cammon I. Arrington, Jeffrey B. Arrington, Irby N. Arrington, B–J Dry Cleaning and Shirt Laundering, 4–A Alliance, Arthur Milne, Thomas Lloyd, Union Park Center Associates, Plaintiffs and Appellants,

v.

The REDEVELOPMENT AGENCY OF SALT LAKE COUNTY, Jerold H. Barnes, the Salt Lake County Commission, and the Salt Lake County Commissioners, individually, Defendants and Appellees,

Hermes & Associates, Intervenor.

No. 940165.

Supreme Court of Utah.

Nov. 2, 1995.

Rehearing Denied March 26, 1996.

724

Nolan J. Olsen, Martin N. Olsen, Midvale, and Walter F. Bugden, Salt Lake City, for Johnson, Harold A. Hintze, Salt Lake City, for Barnes and the Redevelopment Agency.

Paul G. Maughan, Douglas R. Short, Salt Lake City, for the County Commission.

Nick J. Colessides, Salt Lake City, for Hermes.

ZIMMERMAN, Chief Justice:

Eva C. Johnson appeals from a grant of summary judgment in favor of the defendants, the Redevelopment Agency of Salt Lake County ("the RDA")[1] and the Salt Lake County Commission ("the Commission"). Johnson and others brought suit under the 1993 version of the Utah Neighborhood Development Act,[2] challenging the legality and regularity of a Salt Lake County ordinance adopting the Union Fort Redevelopment Plan. After each side moved for summary judgment, the district court granted defendants' motions and denied Johnson's, ruling that the RDA had sufficiently complied with the procedures set out in the 1993 Act to make the ordinance valid.[3] We reverse and remand to the district court to enter judgment in favor of Johnson in accordance with this opinion.

■ By way of background, the purpose of Utah's Neighborhood Development Act is to cure the problem of "blight" through economic redevelopment of the blighted area. *Redevelopment Agency v. Tanner*, 740 P.2d 1296, 1297 (Utah 1987) ("Acquisition and redevelopment of 'blighted' property contributes to the health of the community."). The first step in the redevelopment process is the designation of a redevelopment survey area. Utah Code Ann. § 17A–2–1204. After boundaries are set for the survey area, the

properties within the area are studied to determine if economic redevelopment is feasible. *Id.* If redevelopment is feasible, the RDA may formulate a preliminary plan for the redevelopment of all or part of the survey area. *Id.* § 17A–2–1206. Once the RDA approves a preliminary plan, it is submitted to the legislative body (i.e., city council or county commission) for ultimate approval. *Id.* §§ 17A–2–1215, –1225, –1227. "Upon adoption by the legislative body the agency shall carry out the redevelopment project set forth in the plan." *Id.* § 17A–2–1215. The RDA is empowered to use increased tax revenues generated by the redevelopment to fund the project. *Id.* § 17A–2–1247. "[B]ecause redevelopment is a serious action that may be in derogation of individual property rights," *Salt Lake County v. Murray City Redevelopment*, 598 P.2d 1339, 1344 (Utah 1979), the Utah Neighborhood Development Act contains numerous safeguards to protect property owners. For instance, eminent domain may not be used by the RDA if the purpose of the plan is economic development unless the area to be developed is first found to be blighted. Utah Code Ann. §§ 17A–2–1208, –1209.

With this background in mind, we move on to the instant case. The dispositive facts are undisputed. At the heart of this case are a 22.5–acre tract of land and a 4.3–acre tract of land, both located in an unincorporated portion of Salt Lake County. At the beginning of the events in question, a portion of the 22.5–acre tract was owned by Hermes & Associates, Ltd., an intervenor in this case. By the time this appeal was argued, however, Hermes owned all of the property in both parcels except for Johnson's.

1. The RDA is a municipal/county agency composed of the members of the Salt Lake County Commission who sit as the RDA to exercise the powers conferred by statute on redevelopment agencies.

2. The legislature promulgated the original version of the Utah Neighborhood Development Act in 1969. Utah Neighborhood Development Act, ch. 5, §§ 1–15, 1969 Utah Laws 1134. We will refer to this version of the statute as the "1969 Act." In 1993, the legislature substantially rewrote the Act. Redevelopment Amendments, ch.

50, §§ 1–48, 1993 Utah Laws 325. We will refer to this version of the statute as the "1993 Act."

3. Before the district court, the parties vigorously contested the issue of which version of the Act applied to the Fort Union Redevelopment Plan. Because the district court ruled that the RDA and the Commission had complied with the more stringent requirements of the 1993 Act, it concluded that it did not need to address the issue of which version of the Act applied to Johnson's claims.

In 1991, Hermes operated a shopping center known as the Family Center at Fort Union on property adjacent to the two tracts of land in question. As a shopping center developer, Hermes wanted to expand its Family Center operations onto the 22.5–acre tract. In furtherance of this desire, on October 14, 1991, Hermes requested that the RDA designate the 22.5–acre tract as a redevelopment survey area. *See id.* § 17A–2–1207 (1991). The RDA complied with Hermes' request and passed a resolution designating the 22.5–acre parcel as the "Union Family Center Redevelopment Survey Area." This survey area was to be studied to determine if redevelopment was feasible. The Commission then met and facilitated the study by changing the county's master plan to accommodate the use Hermes proposed for the survey area.

In June of 1992, after deciding that even more land was needed for the proposed expansion of its shopping center, Hermes requested that an additional 4.3 acres be added to the survey area. The request was granted by the RDA in September, and the Commission again changed the master plan to accommodate the proposed expansion. Plaintiff Johnson's property, a residence, was included in the additional 4.3 acres.

On November 18, 1991, while only the original 22.5–acre tract was proposed for redevelopment, the RDA hired independent consultants to study the survey area to determine whether "blight" existed and to assess the proposed redevelopment's impact on the area's traffic and economy. The consultants completed and published the blight survey in November of 1992. The final completed survey concluded that the whole survey area, including the additional 4.3 acres upon a portion of which Johnson's residence stands, was blighted and in need of redevelopment. The RDA then prepared a preliminary redevelopment plan, dated November 16, 1992, and published notice of a public hearing to be held on the consultants' blight survey and the preliminary redevelopment plan. Johnson and others filed their first complaint, seeking to delay the evidentiary hearing regarding blight.

The hearing eventually commenced on February 9th and was continued over a number of nonconsecutive days. It was held jointly before the Commission and the RDA. Redevelopment experts, real estate appraisers, and others presented evidence on the area's blight. On March 8, 1993, the members of the RDA voted unanimously to designate the entire survey area, including Johnson's property, as blighted. The RDA then referred the matter to the office of the county attorney to prepare written findings of fact regarding blight.

Although the RDA had already made its preliminary determination that the survey area was blighted, the hearing continued on March 16, 1993, to consider other matters related to the redevelopment project. At this meeting, Johnson testified that she would "hold out" and not sell her property to Hermes. On March 24th, Johnson and others filed an amended complaint in the district court under section 17A–2–1208(3)(b) of the 1993 Act, seeking de novo review by the district court of the March 8, 1993, blight determination.[4] At the time the complaint was filed, each of the plaintiffs owned property within the survey area. However, during the course of the instant legal action, all but Johnson eventually sold their properties to Hermes.

On April 19th, the RDA directed the county attorney to exclude the Johnson property from the redevelopment area. As a result of this action, Johnson's property, which was the only parcel excluded from the proposed redevelopment area, was left surrounded on three sides by the project. This exclusion was effected without any further public hearings. At this same April 19th meeting, the RDA and the Commission included provisions in the plan for the use of eminent domain against any landowners unwilling to sell to Hermes and confirmed the plan's au-

---

4. Section 17A–2–1208(3)(b) of the 1993 Act states as follows:

Within 30 days after a finding of blight under Section 17A–2–1206 or 17A–2–1225, an owner may appeal a finding of blight by an agency or governing body to a court of competent jurisdiction. The court shall review that finding of blight de novo, and the agency shall maintain the burden of proof regarding blight.

thorization of the use of sales taxes from the project area to pay for the redevelopment project.

On May 5, 1993, while Johnson's action was pending in the district court, the RDA and the Commission adopted written, formal findings of fact regarding blight and prepared an ordinance to create the Union Fort Neighborhood Redevelopment Project Area, which excluded the Johnson property. On May 24, 1993, after further revisions, the Commission drafted the final ordinance, which was passed at the close of the meeting.

On June 23rd, Johnson filed an amended ten-count complaint challenging, under the 1993 Act, the regularity and legality of the redevelopment process and of the resulting plan and ordinance. Specifically, Johnson sought to invalidate the ordinance passed on May 24, 1993. Both Johnson and the RDA sought summary judgment. On January 12, 1994, the district court granted the RDA's motions and denied Johnson's. On the merits, the district court ruled that RDA had substantially complied with all of the applicable provisions of the 1993 Act. The district court also dismissed Johnson's demand for de novo review of the March 8th blight finding by holding that Johnson lacked standing to invoke section 17A–2–1208(3)(b) of the 1993 Act because she was not an owner of property within the redevelopment area. Johnson appeals.

■■■ We first state the applicable standard of review. "When no facts are in dispute, a challenge to a summary judgment presents only conclusions of law." *Texaco, Inc. v. San Juan County,* 869 P.2d 942, 943 (Utah 1994). Furthermore, the proper construction of the Utah Neighborhood Development Act is a question of law. *See State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993); *State v. James,* 819 P.2d 781, 796 (Utah 1991). Accordingly, we grant no particular deference to the district court's statutory interpretations but review them for correctness. *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994); *accord Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990).

■■■ The primary rule guiding us in statutory interpretation is that we give effect to the intent of the legislature. *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 880 (Utah 1993). To discover that intent, we look first to the plain language of the statute. *Larsen,* 865 P.2d at 1357; *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989); *see also Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) (per curiam) ("Unambiguous language in [a] statute may not be interpreted to contradict its plain meaning."). In construing a statute, we assume that "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991). "Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." *World Peace,* 879 P.2d at 259; *see also Schurtz,* 814 P.2d at 1112 ("We first look to the statute's plain language. Only if we find some ambiguity need we look further."); *Brinkerhoff,* 779 P.2d at 686 ("Where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent.").

Johnson asks this court to invalidate the ordinance adopting the Fort Union Redevelopment Project on the ground that the RDA and the Commission failed to strictly comply with the procedural steps set out in the 1993 Act.[5] Specifically, Johnson claims that the RDA failed (i) to designate a project area at the time and in the manner outlined in sec-

---

**5.** We note that as a "person in interest," Johnson has standing to challenge the legality and regularity of the ordinance under section 17A–2–1226 of the Utah Code, which provides:

The legislative body by ordinance may adopt the redevelopment plan in its original form or as modified as the official redevelopment plan for the project area. For a period of 60 days after publication of the ordinance adopting the redevelopment plan, any person in interest may contest the regularity, formality or legality of the ordinance. After the 60 day period no person may contest the regularity, formality or legality of the ordinance for any cause whatsoever.

Utah Code Ann. § 17A–2–1226.

tion 17A–2–1206 of the 1993 Act; (ii) to prepare a preliminary plan at the time and in the manner outlined in section 17A–2–1208(1) of the 1993 Act; and (iii) to provide area residents and property owners with written notice and the opportunity to review and comment on the preliminary plan as required by sections 17A–2–1222 through –1225 of the 1993 Act.

Because we find Johnson's second claim dispositive, we limit our discussion to that issue: to wit, whether the RDA failed to prepare a preliminary plan in accordance with the provisions of section –1208(1) of the 1993 Act. That section provides as follows:

> If the redevelopment plan will authorize the use of eminent domain, the redevelopment project area described in the redevelopment plan must be a blighted area and *a finding that the area is a blighted area must be made by the agency at the time a preliminary plan is prepared, and must be made by the legislative body prior to adopting the plan* under Section 17A–2–1225.

Utah Code Ann. § 17A–2–1208(1) (emphasis added).

Before the district court, Johnson argued that the RDA failed to comply with section –1208(1) because it made a finding that the area to be included in the preliminary plan was blighted only *after* the preliminary plan was prepared, rather than "at the time a preliminary plan is prepared," as the 1993 Act requires. The Commission and RDA's argument in response is two-fold: (i) that section –1208(1) did not apply because the preliminary plan was prepared before that section of the 1993 Act was passed; and (ii) that even if section –1208(1) applies, they had "unwittingly complied" with its requirements by making a "generic" finding of blight at the time they prepared the preliminary plan and

by referencing the blight survey in the preliminary plan. The district court agreed with the RDA and the Commission and ruled that "it appears that a sufficient finding of blight was in fact made in the Union Fort Preliminary Plan."

■ On appeal, the parties simply restate the positions they took before the district court. We begin our analysis with the applicability of section –1208(1) of the 1993 Act to the Fort Union Redevelopment Project.

When the legislature substantially rewrote the Utah Neighborhood Development Act in 1993, it included a nonretroactivity clause in some, but not all, of the individual amended sections of the Act.[6] Johnson contends that if the legislature had intended to exclude all projects then in process from compliance with the 1993 Act, the legislature would have placed the nonretroactivity language in one section at the beginning of the Act and given it a blanket application or, alternatively, it would have included the language in each and every amended section. Instead, it chose to include a specific nonretroactivity clause in many, but not all, of the changed sections. This indicates an intention to make only selected provisions have prospective effect. Because the 1993 Act lacks a blanket nonretroactivity clause and no such clause is attached to section –1208(1), the plain language shows a legislative intention to apply the new provision to all then-pending redevelopment plans. The Commission and the RDA concede that the nonretroactivity language does not appear in every new or amended section of the 1993 Act, but they contend, "It is obvious that the 1993 amendments, read as a whole, indicate that the legislature intended H.B. 278 [the 1993 amendments] to apply prospectively and address redevelopment plans commenced after April 1, 1993."

---

**6.** The nonretroactivity clause, depending upon the context of the relevant statutory provision, reads as follows:

[This section applies to] projects for which a preliminary plan has been prepared after April 1, 1993, and for which any of the following have occurred after July 1, 1993: The completion of the agency blight study, and the good faith commencement of the hearing by the agency under Section 17A–2–1221....

[or]

[This section does not apply to] projects for which a preliminary plan has been prepared prior to April 1, 1993, and for which all of the following have occurred prior to July 1, 1993: The agency blight study has been completed, and a hearing under Section 17A–2–1221 has in good faith been commenced by the agency....

*See, e.g.,* Utah Code Ann. § 17A–2–1207.

We agree with Johnson. The fact that the nonretroactivity language was attached only to certain of the amended provisions and not to others is a clear indication that the legislature intended to exempt ongoing redevelopment projects only from those specific sections containing nonretroactivity clauses, not from the provisions of the 1993 Act as a whole. Under the construction placed on the 1993 Act by the Commission and the RDA, in essence, we would have to read each of the thirty-four nonretroactivity provisions out of the Act and, at the same time, read a blanket nonretroactivity provision back into the Act. This would conflict with the basic tenet of statutory construction that we assume "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage,* 811 P.2d at 670.

Having concluded that section –1208(1) of the 1993 Act applied to the Fort Union Redevelopment Project, we must next address the second issue: whether the RDA and the Commission complied with section –1208(1)'s requirement that "[i]f the redevelopment plan will authorize the use of eminent domain, the redevelopment project area described in the redevelopment plan must be a blighted area *and a finding that the area is a blighted area must be made by the agency at the time a preliminary plan is prepared.*" Utah Code Ann. § 17A–2–1208(1) (emphasis added). We proceed with the understanding that "because redevelopment is a serious action that may be in derogation of individual property rights, ... strict compliance with the enabling legislation is required to enact an ordinance setting up a redevelopment plan." *Murray City Redevelopment,* 598 P.2d at 1344. Although the Utah Neighborhood Development Act "is broad in scope and must be interpreted to delegate to the agencies ample power to serve the purposes of the Act, i.e., to alleviate blight, it is necessary that the legislation enabling this grant of authority be strictly followed." *Id.*

As noted above, section –1208(1) embodies the concern about the need for careful compliance with statutory prerequisites because of the potential impact of redevelopment on individual property owners. It mandates, "If the redevelopment plan will authorize the use of eminent domain, the redevelopment project area described in the redevelopment plan must be a blighted area *and a finding that the area is a blighted area must be made by the agency at the time a preliminary plan is prepared.*" Utah Code Ann. § 17A–2–1208(1) (emphasis added). Johnson argues that the RDA failed to comply with this provision because it prepared the preliminary redevelopment plan in November of 1992 but did not formally "find" that the area comprising the redevelopment was blighted until March 8, 1993.

The RDA and the Commission, on the other hand, argue that the RDA "unwittingly" complied with section –1208(1) when it prepared the preliminary plan. According to the RDA and the Commission, section –1208(1) does not require that the "finding" of blight "be by resolution, that it be reduced to writing, or meet any other formal requirement." A "finding" of blight, as that term is used in section –1208(1), means nothing more than a "generic" belief by the RDA that the area is blighted and that it has decided to prepare a preliminary plan designed to cure that supposed blight. The RDA notes that it was aware, as early as February 26, 1992, that the consultant conducting the blight survey had preliminarily determined that the area was blighted. It was on the basis of the consultant's final report, a report that was ultimately referenced in the preliminary plan, that the RDA directed that a preliminary plan be prepared. These actions, contends the RDA, are sufficient to meet the "generic" finding-of-blight requirement contained in section –1208(1).

We conclude that section –1208(1) contemplates much more than the "generic" finding of blight contended for by the RDA and the Commission. We reach this result because (i) the term "finding" is commonly understood to mean a formal, written determination of fact; (ii) the RDA and the Commission's construction of the term "finding" is inconsistent with the purpose and intent of the legislature in enacting the Utah Neighborhood Redevelopment Act; and (iii) the construction advocated by the Commission and the RDA is unworkable when applied to

the identical term as it is used in other subparts of section –1208.

Although the terms "finding" and "finding of blight" are not defined in the 1993 Act, the term "finding" is commonly understood to connote a formal, written determination of a disputed issue by an adjudicative body. *See Versluis v. Guaranty Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992) (noting that in interpreting meaning of a given word or phrase, "we give effect to each term according to its ordinary and accepted meaning"). For instance, *Webster's New International Dictionary* defines the term "finding" as follows: "The result of a judicial examination or inquiry, esp. into some matter of fact, as embodied in a jury's verdict or a court's decision or a referee's report." *Webster's New Int'l Dictionary* 949 (2d ed. 1954). Furthermore, *American Jurisprudence* states, "Findings are a formal, deliberate statement of a court's determination of facts. . . . Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court, and filed therein, and essential to support the decision and judgment rendered therein." 75B Am.Jur.2d *Trial* § 1968 (1992). The RDA's assertion that a "finding" of blight is nothing more than a general consensus or an informal understanding among the commissioners that blight exists stands in stark contrast to the general usage of the term.

More important, the construction the Commission and the RDA place on section –1208(1) is inconsistent with the purpose of the 1993 Act. *See Sullivan,* 853 P.2d at 880 (noting that primary rule of statutory construction is to give effect to intent of legislature in light of purpose statute was meant to achieve). The purpose behind redevelopment legislation is the alleviation of blight. *See Murray City Redevelopment,* 598 P.2d at 1342. For a redevelopment agency to address the issue of curing blight—which cure may involve a "taking" of private property for public use—the agency must ascertain with specificity whether and to what extent blight exists in a survey area. It is for this reason that the legislature requires a redevelopment agency to make a formal "finding" that blight exists before it develops a plan to cure the blight. Utah Code Ann. § 17A–2–1208(1). The "generic" finding-of-blight requirement that the Commission and the RDA advocate is insufficient to guarantee that the redevelopment process is driven by the desire to cure blight rather than by the desire for the economic development that is promised to follow from a finding of blight or, in other words, that the cart does not precede the horse that is supposed to be pulling it.

Finally, as we recently noted in *Nixon v. Salt Lake City Corp.,* 898 P.2d 265, 268 (Utah 1995), we do not construe a particular section of the Code in the abstract but, rather, in a manner that is harmonious with other closely related code provisions. *See also Schurtz,* 814 P.2d at 1112–13. Section –1208(3)(b) of the 1993 Act provides, "Within 30 days after a *finding of blight,* . . . an owner may appeal [that finding] to a court of competent jurisdiction." Utah Code Ann. § 17A–2–1208(3)(b). If we were to adopt the RDA's informal construction of the term "finding of blight" for section –1208(1), we would be required to adopt that same reading for section –1208(3). Under that reading, property owners would never know when to appeal an agency's finding of blight because there would be no requirement that the finding of blight, in the words of the Commission, "be by resolution, that it be reduced to writing, or meet any other formal requirement."[7]

Because we cannot give the term "finding of blight" in section –1208(1) the construction the RDA advocates without doing significant damage to the remaining sub-

---

7. The Commission seems to recognize this fact in its brief. In its discussion of section –1208(3), the Commission urges this court to hold that "Johnson's action challenging the finding of blight was premature, because it was filed prior to the entry of the [RDA's] and the Commission's [written] Findings of Fact regarding blight." The Commission moves on to argue that its oral finding of blight made on March 8, 1993, was not, in fact, a formal finding of blight, but was more akin to an unsigned minute entry. As such, the Commission argues, the oral finding of blight was not sufficient to trigger the right to de novo judicial review set out in section –1208(3). Curiously, the Commission makes this argument, while at the same time arguing that the finding of blight required by section –1208(1) need only be generic and informal.

sections of section –1208, *see Curtis v. Harmon Elecs., Inc.,* 575 P.2d 1044, 1046 (Utah 1978) (noting presumption that statutes are not intended to produce undesirable or inequitable consequences), and because the RDA's reading of the term is inconsistent with the intent and purpose of the legislature in adopting the 1993 Act, we conclude that section –1208(1) contemplates a formal, written finding that an area is blighted before a preliminary plan is prepared for that area. Since the RDA did not make a formal, written finding of blight prior to or at the time it prepared the preliminary plan and because "strict compliance with the enabling legislation is required to enact an ordinance setting up a redevelopment plan," *Murray City Redevelopment,* 598 P.2d at 1344, we conclude that the ordinance in question is invalid.

 In addition to asking us to invalidate the ordinance creating the Fort Union Redevelopment Plan, Johnson seeks a declaration that she was "wrongfully denied the opportunity for [de novo] trial review of the finding of blight," as provided by section –1208(3) of the 1993 Act.[8] Johnson seeks this declaration because she believes that section –1208(3)(b) "is one of the most important of the 1993 amendments to the Act." Our resolution of this issue is governed by our analysis of section –1208(1) set out above.

We hold that Johnson was not entitled to de novo judicial review of the blight finding because the preliminary vote of the Commission on March 8, 1993, which concluded that Johnson's property was blighted, was not a formal "finding of blight" as that term is used in section –1208(3) and, therefore, did not trigger the right to de novo judicial review. The term "finding of blight" both in section –1208(1) and in section –1208(3) means a formal, written finding that an area is blighted. *See Nixon,* 898 P.2d at 269. The RDA and the Commission made a formal, written finding of blight on May 5, 1993, but the finding specifically excluded Johnson's property. Because neither the RDA nor the Commission ever "found" that Johnson's property was blighted within the meaning of the statute, the district court did

not err in denying de novo judicial review under section –1208(3)(b).

Because we conclude that the RDA failed to comply with the provisions of section –1208(1) and that the Commission's ordinance adopting the Fort Union Redevelopment Plan is invalid, we reverse and remand to the district court to enter judgment in favor of Johnson in accordance with this opinion.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur in ZIMMERMAN, C.J., opinion.

8. For the text of section –1208(3)(b), see *supra* note 4.