2004 UT 88

STATE of Utah, by and through the OF-
FICE OF RECOVERY SERVICES,
Plaintiff and Appellee,

v.

Peggy Sue STREIGHT, by and through
Orval (Bud) and Karen JENSEN, her
conservators and guardian, and Robert
B. Sykes & Associates, a Utah profes-
sional corporation, Defendants and Ap-
pellants.

No. 20020572.

Supreme Court of Utah.

Oct. 29, 2004.

Mark L. Shurtleff, Att'y Gen., Stephanie
M. Saperstein, Asst. Att'y Gen., Salt Lake
City, for plaintiff.

Donald J. Winder, Robert B. Sykes, Salt
Lake City, for defendants.

PARRISH, Justice:

¶ 1 On appeal is the district court's conclusion that the attorney fee provision of the Medical Benefits Recovery Act, Utah Code Ann. § 26–19–7 (1998), did not require the State to pay attorney fees in the action below. Counsel for Peggy Sue Streight obtained a recovery on her behalf for injuries she suffered when struck by an automobile. The State asserted a right to be reimbursed from that recovery for Medicaid payments it had made on Streight's behalf. We are asked to consider whether the State's right to reimbursement is subject to deduction for attorney fees Streight incurred even though Streight and her attorneys neither requested nor obtained the State's consent before entering into the settlement that yielded the recovery. We conclude that the State need not pay Streight's attorney fees, and we therefore affirm the district court's holding.

## BACKGROUND

¶ 2 While crossing the street, Streight, a single mother of three children, was struck by an automobile and severely injured. She had no health insurance. The accident left Streight unable to care for herself. Her parents, who had been appointed as her conservators, applied for assistance from the state Medicaid program to pay for her extensive medical bills. The State paid approximately $107,000 in medical expenses for Streight's care.

¶ 3 Streight's parents retained the law firm of Robert B. Sykes & Associates ("Sykes") to pursue any recovery available from the driver of the car and any insurers. Sykes obtained a collective settlement of $110,000 from the driver's insurer and Streight's underinsured motorist insurance provider, but did so without requesting or obtaining the State's consent for the settlement. Approximately $38,000 of the settlement was paid to Sykes pursuant to a contingent fee agreement. Out of the settlement proceeds, the State claimed a right to reimbursement of the approximately $107,000 it had paid in Medicaid payments, without a reduction for attorney fees. The State filed suit, seeking disgorgement of the fees paid to Sykes pursuant to Utah Code section 26–19–7, which specifies the terms under which the State is given control over actions to recover medical costs that have been paid by the state Medicaid program. Utah Code Ann. § 26–19–7 (1998).

¶ 4 The district court granted the State's motion for summary judgment, ruling that the State is entitled to reimbursement of the full $107,000 recovered on behalf of Streight, without reduction for the fees paid to Sykes. It therefore ordered that Sykes disgorge the fees in satisfaction of the State's Medicaid reimbursement claim. Sykes appeals, maintaining that our holding in *State ex rel. Office of Recovery Services v. McCoy*, 2000 UT 39, ¶¶ 13–20, 999 P.2d 572, requires the State to pay the attorneys who obtained the settlement from which the State has, in turn, recovered.

## ANALYSIS

¶ 5 We review a grant of summary judgment by viewing all the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party, in this case Streight and her attorneys. *State Farm Mut. Auto. Ins. Co. v. Green*, 2003 UT 48, ¶ 3, 89 P.3d 97. We will affirm summary judgment only "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 6 Streight's appeal of the district court's grant of summary judgment requires us to interpret both a statute and our case law. These are questions of law that we review for correctness, giving no deference to the district court's interpretations. *Johnson v. Redevelopment Agency*, 913 P.2d 723, 727 (Utah 1995) (noting that statutory interpretations are reviewed for correctness); *Stevensen v. Goodson*, 924 P.2d 339, 346 (Utah 1996) (" 'We consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness.' " (quoting *State v. Richardson*, 843 P.2d 517, 518 (Utah Ct.App.1992))).

¶ 7 Sykes argues that it is entitled to attorney fees from the State under Utah Code section 26–19–7 and our decision in *State ex*

*rel. Office of Recovery Services v. McCoy,* 2000 UT 39, 999 P.2d 572, in which we interpreted that statute. The district court held that Utah Code section 26–19–7 does not provide a basis for requiring the State to pay attorney fees in this case because the facts of *McCoy* are distinguishable from those presented here. Alternatively, the district court held that *McCoy* was wrongly decided. Although we decline the district court's suggestion that we revisit *McCoy,* we nevertheless affirm the district court because we agree with its conclusion that the statute, as we interpreted it in *McCoy,* does not require the State to pay Sykes' attorney fees in this case.

¶ 8 Utah Code section 26–19–7 provides, in pertinent part:

> (1)(a) A recipient may not file a claim, commence an action, or settle, compromise, release, or waive a claim against a third party for recovery of medical costs for an injury, disease, or disability for which the [State] has provided or has become obligated to provide medical assistance, without the [State's] written consent.
>
> . . . .
>
> (4) The [State] may not pay more than 33% of its total recovery for attorney's fees, but shall pay a proportionate share of the costs in an action that is commenced with the [State's] written consent.

Utah Code Ann. § 26–19–7(1)(a), (4) (1998). On its face, the statute requires the State to share proportionally in the costs of an action to which it consents, and provides an upper limit on the amount of fees the State may pay. The statute does not, however, explicitly address the State's obligation to pay attorney fees for an action to which it did not consent.

¶ 9 In *McCoy,* we considered the case of a Medicaid recipient whose attorney asked for the State's consent to bring an action to pursue insurance recovery on behalf of the recipient and the State. 2000 UT 39 at ¶ 3, 999 P.2d 572. The State refused. *Id.* The attorney, John McCoy, then proceeded against the relevant insurers, but did so in such a way as to expressly exclude the State's claim against the insurers, thereby preserving the State's right to seek recovery separately. *Id.* at ¶ 15. We reasoned that the State could not enforce its Medicaid lien against McCoy's attorney fees because McCoy had requested consent and had done nothing to prejudice the State's right to recover its Medicaid payments. *Id.* at ¶ 18 & n. 4. We therefore held that "under subsection (4), when the State elects to recover directly from a recipient who has expressly excluded the State's claim from any attempt to recover from a third party, the State must pay the attorney fees incurred in procuring the State's share of the settlement proceeds." *Id.* at ¶ 18.

¶ 10 The considerations that led us to conclude that "it would be inherently unfair not to award attorney fees to McCoy," *id.,* are not present in this case. McCoy requested the State's consent to his action and, when he was refused, excluded the State's claim from his action so as to preserve, not prejudice, the State's ability to pursue its own claim. Unlike McCoy, Sykes did not seek the State's consent before bringing the action on behalf of Streight, nor did it seek to exclude the State's claim from the action it filed. Also, unlike McCoy, Sykes took no action to preserve the State's right to separately pursue its own recovery. Therefore, neither the statute nor *McCoy* provides a basis for concluding that the State must pay Sykes' attorney fees.

¶ 11 In an attempt to bring this case within the purview of the rule announced in *McCoy,* Sykes argues that Streight provided the State with sufficient notice and opportunity to commence its own action against the tortfeasor's and Streight's insurers when Streight listed the names of the tortfeasor and the insurers in her application for Medicaid assistance. We disagree. Although the identities of the tortfeasor and the insurers were available to the State's Medicaid program, listing such information on a Medicaid application is not sufficient to discharge the Medicaid recipient's "duty to cooperate with the State in identifying and providing information to assist the State in pursuing any third party who may be liable to pay for medical care and services." *Id.* at ¶ 18 n. 4. More importantly, providing the names of tortfeasors and insurance companies on an

application for Medicaid benefits constitutes neither notice of an action against them nor a request for consent to such an action. In *McCoy,* the State's refusal to consent to the recipient's action was an essential element of our holding that the State was obligated to pay the recipient's attorney fees. The *McCoy* court stated that, "[h]aving elected not to recover directly from the third party in the case before us, the State ... *incurred a responsibility* to pay attorney fees." *Id.* at ¶ 18 n. 5 (emphasis added). That is not the situation presented here.

¶ 12 In a further attempt to bring this case within the rule announced in *McCoy,* Sykes focuses on our observation that the State was not prejudiced by the settlement in that case because McCoy "effectively preserved the State's right of action." *Id.* at ¶ 18 n. 4. Although Streight's settlement with the insurers foreclosed the State's right to proceed against them, Sykes nevertheless argues that the State was not prejudiced by the settlement because it was provided with the identities of the tortfeasor and insurers well before the settlement and thus had ample opportunity to proceed against them. Sykes further argues that there is no prejudice to the State because the State was entitled to a full recovery from Streight even after the settlement. We disagree. The State can obtain a full recovery from Streight only if Streight's recovery is not reduced by the amount of Sykes' attorney fees. Were we to hold for Sykes in this case, the State would be prejudiced in this and future cases, having lost its ability to choose the most efficient vehicle for its recovery, within the guidelines of the statute and *McCoy,* and to protect itself from any collusive efforts to shield recoveries from its right of reimbursement.

¶ 13 Sykes also argues that it is entitled to attorney fees because the statute does not explicitly provide that forfeiture of attorney fees is the consequence of a failure to request or obtain the State's consent. This argument fails to recognize that the plain terms of the statute do not address any affirmative obligation on the part of the State to pay attorney fees. In *McCoy,* on grounds of fairness, we interpreted the statute to imply an obligation on the part of the State to pay fees where the attorney acted in compliance with the statute, requesting consent to pursue an action and then preserving the State's independent right to recover by excluding the State's claim from any action filed on behalf of the injured party. *Id.* at ¶ 18. In doing so, *McCoy* struck a balance between the State's interest in protecting itself from collusive efforts to place otherwise reimbursable funds beyond its reach and the interest of private attorneys in being compensated for obtaining recoveries benefitting the State. This balance would be upset were we to extend *McCoy* to situations where a Medicaid recipient's private attorney does not bother to seek the State's consent to his or her action.

¶ 14 Sykes argues that permitting the State to take the recovery that was obtained only by the efforts of private attorneys, without paying those attorneys, is unjust. We did note in *McCoy* that it would be "unfair" for the State to deprive McCoy of attorney fees when he had requested the State's consent and, when refused, had acted to preserve the State's claims by excluding them from the settlement. In this case, however, Sykes did not seek the State's consent. Sykes and other attorneys filing cases on behalf of Medicaid recipients may avoid the injustice of working to obtain a recovery without being paid simply by complying with the provisions of Utah Code section 26–19–7, as described in *McCoy.* *Id.* at ¶¶ 13–20.

¶ 15 Finally, Sykes argues that the priority of the State's Medicaid lien in this case violates federal law. Sykes recognizes that we rejected this argument in *Houghton v. Department of Health,* in which we held that the priority of a Medicaid lien such as the one at issue here does not violate federal law. 2002 UT 101, ¶ 8, 57 P.3d 1067. Sykes asserts, however, that he raised the argument in order to preserve the issue for appeal because a Minnesota case addressing the same question had been appealed to the United States Supreme Court. *See Martin v. City of Rochester,* 642 N.W.2d 1 (Minn. 2002). Since the filing of the briefs in this matter, the Court has denied certiorari on that case. *Minnesota v. Martin,* 539 U.S. 957, 123 S.Ct. 2668, 156 L.Ed.2d 655 (2003).

Accordingly, despite Sykes' attempt to preserve the issue and the arguments advanced by the Chief Justice's dissent, *Houghton* remains the law of this state on the issue.

## CONCLUSION

¶ 16 We affirm the district court's ruling that the State has no obligation to pay Streight's attorney fees. There is no basis for such an obligation either in Utah Code section 26–19–7 or in *McCoy* because Sykes did not comply with the statute's mandate to seek consent before filing an action on Streight's behalf. We decline to extend the State's contingent obligation to pay attorney fees, described in *McCoy*, to cases where attorneys fail to seek the State's consent to actions seeking recovery of Medicaid recipients' medical costs. We also decline to reconsider our holding in *Houghton* that the priority of state Medicaid liens does not violate federal law.

¶ 17 Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

DURHAM, Chief Justice, dissenting:

¶ 18 I respectfully dissent. As I argued in my dissents in *Houghton v. Department of Health*, 2002 UT 101, ¶ 8, 57 P.3d 1067, and in *Wallace v. Estate of Jackson*, 972 P.2d 446, 449 (Utah 1998), Utah's lien provisions are contrary to federal law. This case highlights another dimension of that problem.

¶ 19 Federal Medicaid law places responsibility on the State to recover medical costs from liable third parties. A state plan must provide for obtaining information about potential third-party liability and assignment of rights from Medicaid recipients, 42 U.S.C. § 1396k(a)(1) (2003), and for obtaining information about potential third-party liability from other state agencies, *id.* § 1396k(a)(2). In accord with the statute, the applicable federal regulation specifically requires a state Medicaid agency to obtain, if possible, state motor vehicle accident report files. 42 C.F.R. § 433.138(d)(4)(ii) (1996). The agency commentary on this regulation points out that motor vehicle accident reports are likely to contain information about liability, insur-

ers, and witnesses that Medicaid recipients themselves may not know. Medicaid Program; Identification of Third Party Liability Resources for Medical Assistance, 52 Fed. Reg. 5967 (Feb. 27, 1987). The state Medicaid agency must follow up on any relevant information within forty-five days "in order to identify legally liable third-party resources and incorporate such information into the eligibility case file and into its third-party data base and third-party recovery unit." 42 C.F.R. § 433.138(g)(1)(I).

¶ 20 Here, the Medicaid recipient (Streight) gave the State the required information. We do not know whether the State fulfilled its additional obligation to seek information about the accident from the Utah Division of Motor Vehicles (DMV). In any case, the State did not act on any such information until Streight settled with the liable third party. Only then did it seek to recover Medicaid expenses by imposing a lien on Streight's settlement proceeds. The State cites the requirement, in Utah Code section 26–19–7(1)(a), that the recipient notify it before filing or settling a claim against a third party "for recovery of medical costs." Utah Code Ann. § 26–19–7(1)(a) (1998). However, the record is unclear as to whether Streight's claim was for recovery of medical costs, or whether Streight sought other damages, such as compensation for pain and suffering, lost wages, etc. Since Streight had already assigned her right to recover medical costs to the State and did not seek permission from the State to recover such costs herself, it is logical to assume, in the absence of evidence to the contrary, that her independent claim against the third party did not seek to recover medical costs. (Since the accident rendered Streight unable to care for herself, a settlement amount of $110,000, exclusive of medical costs, does not appear in any way exorbitant.) In that case, the State should not be able to impose a lien on any of the settlement proceeds, much less on the attorney fee portion, because the settlement amount did not reflect medical costs.

¶ 21 Even if Streight did seek to recover medical costs in violation of Utah Code section 26–19–7, that statute appears to conflict with federal requirements insofar as it is

used by the State to bypass its own responsibility to recover from third parties. We do not know whether the State followed up on the information given it by Streight or on any additional information contained in the DMV accident report within the required forty-five-day period, or whether it gave any consideration to making an attempt to recover medical costs itself. By not taking action itself, the State may have waived its ability to recover medical costs directly from the insurer. Federal Medicaid law imposing recovery responsibility on the State should foreclose an interpretation of state law that allows the State to abrogate this responsibility by relying on Medicaid recipients to act, usually unwittingly, on the State's behalf.