COMMERCIAL STANDARD INSURANCE COMPANY OF FORT WORTH, TEXAS *v.* WILBERT COMBS ET AL

5-5369                                                     460 S. W. 2d 770

Opinion delivered November 23, 1970
[Rehearing denied January 11, 1971.]

*Williams & Gardner,* for appellant.

No brief for appellees.

J. FRED JONES, Justice. This is an appeal by Commercial Standard Insurance Company of Fort Worth, Texas, hereinafter called "Commercial," from an adverse judgment of the Pope County Circuit Court in a

suit brought by Commercial against Mr. and Mrs. Combs to enforce subrogation rights in the proceeds of a judgment obtained by Combs against a Mr. Owens for collision damages to the Combs automobile and in which Combs' attorneys claimed a contingent fee interest. Mrs. Combs remained a party litigant throughout but for convenience we refer to both parties as "Combs."

While the record before us is not as complete as it might have been, we gather from the pleadings, and from such evidence that is of record, the following facts: Commercial issued a $50 deductible insurance policy to Combs insuring the Combs automobile against collision loss, and the policy was in force on December 18, 1967, when the Combs automobile was involved in a collision with an automobile operated by a Mr. Owens. Mr. and Mrs. Combs were injured in the collision and their automobile was damaged. On or about March 11, 1968, Combs submitted a form statement in proof of loss to Commercial, and was paid $1,230.12 in satisfaction of the amount owed under the policy. The policy is not in evidence so we do not know the extent of coverage under it; but the statement signed by Combs in his proof of loss contained the following agreement:

> "The insured hereby covenants that no release has been or will be given to or settlement or compromise made with any third party who may be liable in damages to the insured; and the insured in consideration of the payment made under this policy hereby assigns and transfers to the said company to the extent of the payment herein made each and all claims and demands against any other party, person, persons, partnership or corporation, arising from or connected with such loss and damage, and the said company is hereby authorized and empowered to sue, compromise or settle in my name or otherwise to the extent of the money paid as aforesaid."

From the pleadings and proof it appears that on December 19, 1967, Combs employed attorneys Mobley, Bullock and Harris to prosecute a claim for damages against Mr. Owens, and agreed to pay the attorneys, as

a fee for their services, 40% of all amounts recovered. Combs also assigned to the attorneys an undivided 50% interest in the cause of action against Owens as security for the payment of the agreed fee. The attorney-client contract is not in the record, but it is alleged in Combs' pleadings that the contract was entered into on December 19, which was the day following the collision. The record indicates some unsuccessful negotiations toward settlement of the claim against Owens, but on December 16, 1968, Combs filed suit against Owens for damages because of personal injuries, as well as property damages. The case was tried before a jury on March 18, 1969, and a judgment was entered on a general verdict for Mr. Combs in the amount of $10,500, and for Mrs. Combs in the amount of $2,000. The verdicts against Owens exceeded the total of Owens' liability insurance coverage and the judgment was settled for a total amount of $11,500. Owens' liability insurance carrier having had notice of Commercial's subrogation claim, paid the $11,500 into the registry of the court.

On May 20, 1969, Commercial filed its complaint against Combs setting out the above facts except as to the agreement between Combs and the attorneys. Commercial prayed judgment against Combs in the amount of $1,230.12. Commercial then attached, through garnishment before judgment, the funds that had been paid into the registry of the court. Combs filed an answer denying that he collected any amount from Owens for property damage. He alleged repeated efforts to get Commercial to prosecute its subrogation rights against Owens and Commercial's refusal to do so. As a counterclaim Combs alleged that Commercial had kept the $1,230.12 belonging to Combs tied up in garnishment and prayed judgment against Commercial for $1,230.12. Combs' attorneys intervened alleging their contract with Combs as above set out. They alleged that under their contract with Combs they were entitled to a fee of 40% of the amount attached by Commercial; that Commercial had wrongfully attached a portion of the recovery belonging to Combs, and they prayed judgment for $492.05. Of the amount paid into the registry of the court, $1,500 repre-

sented the gross amount of the recovery against Owens for damage to the automobile; and all of the amount except the $1,500 was paid over to Combs, leaving $1,500 still in the registry of the court and subject to the attachment.

The only testimony in the record is that of attorney Mobley. Most of his testimony was directed to the unsuccessful attempt to get Commercial to participate in the efforts to collect the property damage from Owens. He testified that the property damage was finally settled for $1,500 in addition to the damages for personal injuries.

The trial court found that Commercial had waived its rights under its subrogation agreement, by refusing to participate in the litigation against Owens, and for reasons beyond our comprehension, the trial court entered judgment as follows:

"IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the Complaint of Plaintiff, Commercial Standard Insurance Company of Fort Worth, Texas, be and the same is hereby dismissed; it is further considered, ordered and adjudged that Counter Claimants, Wilbert Combs and Mary Combs, do have and recover judgment against Plaintiff, Commercial Standard Insurance Company of Fort Worth, Texas, in the sum of $738.07 with interest thereon from the 17th day of April, 1969, at the rate of six per cent per annum; it is further considered, ordered and adjudged that Intervenors, Jeff Mobley, William R. Bullock and John C. Harris, d.b.a. Mobley, Bullock and Harris, Attorneys at Law, do have and recover judgment against the Plaintiff, Commercial Standard Insurance Company of Fort Worth, Texas, in the amount of $492.05 with interest thereon from the 17th day of April, 1969, at the rate of six per cent per annum. It is further considered, ordered and directed that Counter Claimants, Wilbert Combs and Mary Combs, and Intervenors, Jeff Mobley, William R. Bullock and John C. Harris, d.b.a. Mobley, Bullock and Harris, Attorneys at Law, do

have and recover from Plaintiff, Commercial Standard Insurance Company of Fort Worth, Texas, all their costs herein expended.

The attachment by Commercial Standard Insurance Company of Fort Worth, Texas, Plaintiff herein, of the funds in the hands of the Clerk of this Court is hereby dissolved and the Clerk of this Court is hereby ordered and directed to pay over to Counter Claimants and Intervenors the funds in his hands in partial satisfaction of the judgment awarded herein."

On appeal to this court Commercial relies on the following points for reversal:

"The lower court erred in awarding judgment against appellant for part of Combs' attorneys' fee.

The lower court erred in awarding judgment to Combs of $738.07."

Commercial contends that our decision in the case of *Courtney* v. *Birdsong*, 246 Ark. 162, 437 S. W. 2d 238, is determinative of the question presented on this appeal. We do not agree. We consider the case at bar more in line with our decision in the case of *Washington Fire & Marine Ins. Co.* v. *Hammett*, 237 Ark. 954, 377 S. W. 2d 811, which case was distinguished in *Birdsong*. In the first place, the *Birdsong* case was a suit strictly between the insured subrogor and his insurance carrier. In *Birdsong* the insured had a 50% contingent fee arrangement with his attorney and subsequently, after he had filed suit against the tort-feasor, and while the suit was pending, he called on his insurance carrier to pay accrued medical bills in the amount of $1,797.90. This amount was paid in the form of a loan by the insurance company, and as security for the repayment of the $1,797.90, the insured assigned his cause of action, to the extent of his *net* recovery, against the tort-feasor. The insured in *Birdsong* convenanted that no settlement of his claim against the tort-feasor had been made or would be made without the written consent of the in-

surance carrier. The insured's attorney in *Birdsong* knew of the advancement made to his client but did not know the contents of the agreement his client had entered into with the insurance company until a compromise settlement in the amount of $5,000 had been reached and agreed to by the insured, his attorney, and the tort-feasor's insurance carrier. Upon being advised of the company's claim against his client for the $1,797.90 advanced on medical bills, the attorney directed the tort-feasor's insurance carrier to draw two separate drafts, one for $3,202.10 to himself and his client, and the other in the amount of $1,797.90 to himself, his client and the insurance company. This was done and the suit against the tort-feasor was dismissed with prejudice. The difficulty arose in *Birdsong* when the company's attorney called for its draft and the insured refused to endorse it contending that when he paid his attorney out of the $1,797.90 draft, his *net* recovery would only be one-half of that amount and that he had only agreed to reimburse the company to the extent of his *net* recovery.

What the *Birdsong* case boiled down to was simply this: The insured owed his attorney 50% of the $5,000 collected in the compromise settlement of his lawsuit. The attorney settled the lawsuit and earned his fee without even knowing that his client had pledged a part of his net recovery for money advanced by the insurance company. In effect, we concluded in *Birdsong* that the insured's *net* recovery had been determined before the drafts were delivered and that the draft for $1,797.90 drawn at the attorney's request, was a part of the insured's $2,250 *net* recovery. It was not until the amount pledged had been segregated from the gross recovery and the draft for that amount had been drawn and delivered under the directions, and at the request, of the insured's attorney, that demand was made for contribution on attorney's fees. Of course, the insurance company had no interest in the amount recovered except as it related to the plaintiff's *net* recovery. Such was not the situation in *Hammett, supra,* and such was not the situation in the case at bar.

Turning now to the case at bar, Combs did not agree to reimburse Commercial to the extent of the *net* amount he would recover from Owens. In order to collect what Commercial owed and agreed to pay under its contract with him, Combs not only assigned all claim and demands against Owens to Commercial; he also authorized Commercial to sue, compromise and settle in his name or otherwise to the extent of the amount Commercial had paid. He did not covenant that he had not, and would not, settle or compromise his claim against Owens without the knowledge or consent of Commercial; he covenanted that he would not compromise or settle his claim against Owens at all.

> "No release has been or will be given to or settlement or compromise made with any third party who ma~~y~~ be liable to the insured."

As already stated, the insurance contract is not in the record, so we can only surmise from the statement contained in Commercial's brief, as well as the difference between the amount paid under the provisions of the contract and the amount of the recovery from Owens, that the insurance contract only covered the cost of repairs to Combs' automobile and did not cover the full difference in market value of the automobile for which Owens was liable. Be that as it may, Commercial stood on the above covenant and assignment and apparently on an arbitration arrangement between insurance companies, and Commercial did nothing from March 11, 1968, until December 16, 1968, when Combs was forced to file suit agains⊦ Owens to recover damages for personal injuries as wel⊦ � s the full damage to the automobile. Commercial wa⌄ notified of the pending litigation and that claim was being made for the property damage, as well as personal injuries. Commercial was urged to hire an attorney or to contribute to Combs' expense in hiring attorneys to pursue the claim against Owens for the property damage. Commercial continued to rely on the covenant and assignment from Combs and steadfastly failed and refused to participate in any manner.

It must be remembered that Commercial was only subrogated to the amount it had paid to Combs and not to the full amount of the damage Combs had sustained to his automobile. In attempting to get Commercial's cooperation in collecting from Owens, Combs' attorneys even threatened to eliminate Commercial's interest in the property damage from Combs' claim against Owens unless Commercial agreed to compensate them for their services; but, nevertheless, the company refused to hire its own attorney to participate in the matter or to share any part of the expenses of collection from the tortfeasor Owens. Apparently, in recognition of Combs' right to recover from Owens the full difference in the market value of the automobile before and after the collision, including the $50 deductible which Commercial did not pay; and apparently in recognition that Combs' cause of action against Owens could not be split between his personal injury and property damages without destroying his own claim as well as Commercial's claim against Owens for property damage,[1] Combs' attorneys did not strike from Combs' complaint against Owens the property damage item as they had threatened to do, but proceeded to a jury trial which resulted in the compromise and which included the $1,500 for the property damage to Combs' automobile as above set out.

The damages Combs sustained to his automobile exceeded the amount to which Commercial was subrogated. We agree with Commercial's argument that stronger language was used in the assignment to Commercial in the case at bar than was used in the *Birdsong* case, and we agree with Commercial's argument that:

> "Here, the assignment gives the Insurance Company the right to handle the claim as it saw fit even to sue in the insured's name while in the Courtney case the insured only agreed to cooperate and to commence the suit himself for the recovery from the wrongdoer."

---

[1] *Washington Fire & Marine Ins. Co.* v. *Hammett,* 237 Ark. 954; 377 S. W. 2d 811; *Motors Ins. Corp.* v. *Coker,* 218 Ark. 653, 238 S. W. 2d 491.

We cannot agree, however, that an insurance company may require its insured to make such an assignment and covenant as a condition for payment or settlement of its obligation, and then relying on arbitration arrangements between insurance companies, force the insured to split his cause of action against the tort-feasor, bear the entire cost of collection or wait out the period of limitations.

The judgment of the trial court in the case at bar totally ignores both the legal and equitable principles set out in our decision in the case of *Courtney* v. *Birdsong, supra,* as well as *Washington Fire & Marine Ins. Co.* v. *Hammett, supra.* Under no stretch of the imagination, from the record before us, can we perceive of why the insureds, Mr. and Mrs. Combs, and their attorneys, would be entitled to separate judgments for $738.07 and $492.05 respectively, against Commercial in this case.

There are only two questions actually involved in this case. The first question is whether Combs' attorneys are entitled to their contractual fee out of the total amount of the recovery, and we are of the opinion that they are. The next question is whether Commercial is required to share with Combs a proportionate share of the expenses of recovery under the facts of this case, and we are of the opinion, and so hold, that under the equitable doctrine of subrogation, it is. (*Washington Fire & Marine Ins. Co.* v. *Hammitt, supra*). See also *United States Automobile Ass'n* v. *Hills,* 172 Neb. 128, 109 N. W. 2d 174; *Brown* v. *T. W. Phillips Gas & Oil Co.,* 105 F. Supp. 479.

The judgment of the trial court is reversed and this cause is remanded with instructions to enter judgment in favor of the attorneys for 40% of the amount remaining in the registry of the court, and to render judgment in favor of Commercial for the balance of said funds.

Reversed and remanded.