2008 UT 86

Paul HOUGHTON and Billie Henderson, individually and each as representative of a class; and Damian Henderson, Wayne Rubens, Ron Roes, and Susan Roes, who are other members of these classes, similarly situated, Plaintiffs and Appellants,

v.

DEPARTMENT OF HEALTH; The Office of Recovery Services; The Department of Human Services; The State of Utah; Rod L. Betit, Director of the Department of Health and Director of Department of Human Services; Emma Chacone, Executive Director of the Office of Recovery Services; and John Does 1–50 and Jane Does 1–50, Defendants and Appellees.

No. 20070197.

Supreme Court of Utah.

Dec. 16, 2008.

Rehearing Denied April 23, 2009.

See also 962 P.2d 58, 57 P.3d 1067, 125 P.3d 860.

Robert B. Sykes, Alyson E. Carter, Salt Lake City, for appellants.

Mark L. Shurtleff, Att'y Gen., Philip S. Lott, Peggy E. Stone, Debra J. Moore, Asst. Att'ys Gen., Salt Lake City, for appellees.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This interlocutory appeal presents two issues. The first concerns the timeliness of the petition for interlocutory review. We hold that the petition was timely. The second concerns the district court's decertification of a class of plaintiffs suing the State to recover attorney fees pursuant to *State v. McCoy.*[1] We hold that the district court erroneously interpreted the law when it concluded that no common issues of fact predominated because calculating reasonable attorney fees involved a fact-intensive inquiry. In the context of a *McCoy* claim, reasonable attorney fees are calculated according to the plaintiff's attorney fee agreement, subject to the statutorily mandated thirty-three percent cap.

## BACKGROUND

¶ 2 This is the fourth time this case has arrived at our court on an interlocutory appeal during its thirteen years of litigation,[2] and the parties have yet to finish discovery. Because we have set out the facts in our prior opinions, we will limit our factual recitation to what is necessary to provide context and to address the issues in this interlocutory appeal.

¶ 3 The Medicaid Benefits Recovery Act[3] authorizes the State to place a priority lien on settlements or awards received by Medicaid recipients from third parties.[4] This provides a means for the State to reimburse itself for medical services provided to the recipient when the recipient later receives compensation from a third party. In *State v. McCoy*, we held that if the State satisfies its

---

1. 2000 UT 39, 999 P.2d 572.

2. *See Houghton v. Dep't of Health (Houghton III)*, 2005 UT 63, 125 P.3d 860; *Houghton v. Dep't of Health (Houghton II)*, 2002 UT 101, 57 P.3d 1067; *Houghton v. Dep't of Health (Houghton I)*, 962 P.2d 58 (Utah 1998).

3. Utah Code Ann. §§ 26–19–1 to –18 (1989) (current version at *id.* §§ 26–19–1 to –19 (2007)).

4. *Id.* § 26–19–5(1)(b).

lien from an award or settlement obtained through the efforts of a private attorney, "the State must pay the attorney fees incurred in procuring the State's share of the settlement proceeds."[5]

¶ 4 The plaintiffs in this case are Medicaid recipients who obtained recoveries through the efforts of private attorneys and later had those recoveries reduced by the State's priority lien. The plaintiffs are seeking reimbursement from the State for "reasonable attorney fees"[6] under *McCoy* ("*McCoy* claims").

¶ 5 In our most recent interlocutory review of this case, we clarified that *McCoy* was not limited to its facts.[7] We held that the State must pay its "proportionate share of attorney fees" in "all cases where the State satisfie[d] its lien" through a recovery obtained by a private attorney and where the attorney requested consent from the State pursuant to Utah Code section 26-19-7(1)(a).[8] We then remanded the case to the district court.[9]

¶ 6 On remand, the district court first considered a motion to decertify filed by the State before the *Houghton III* interlocutory appeal. Finding "no common issue that would justify the case continuing as a class action," the district court ordered limited discovery on fifty claims and additional briefing on whether the class should be decertified. On December 22, 2006, the district court issued an order decertifying the class (the "Decertification Order"). The district court concluded that no common issues of fact predominated because the plaintiffs could only prevail under *McCoy* by proving that the State did not pay reasonable attorney fees and the reasonableness of the attorney fees paid by the State was a fact-specific inquiry based on the totality of the circumstances. For cases in which the plaintiffs alleged that the State underpaid attorney fees, the district court concluded that issues of waiver, estoppel, or accord also precluded class certification.

¶ 7 Recognizing that its decision to decertify the class would impact other pending motions, the district court requested additional briefs from the parties addressing the impact of the Decertification Order. On January 9, 2007, the plaintiffs sent the district judge a letter expressing uncertainty regarding the correct time to appeal, in response to which the district court issued a minute entry on January 12, 2007, indicating that the Decertification Order was "provisional." On January 23, 2007, the parties argued the remaining motions to the district court. Following oral argument, the district court directed the State's counsel to prepare the court's order on the motions. The district court signed the prepared order on February 15, 2007. The new order did not substantively change or modify the December 22 order other than stating that it was now "final." The plaintiffs filed a petition for interlocutory review on March 7, 2007.

¶ 8 We provisionally granted permission for this interlocutory appeal on May 29, 2007. Our grant of review was limited to two questions:

1. Whether this Court has jurisdiction, pursuant to rule 5 of the Rules of Appellate Procedure, to review the December 22, 2006 "order on motion for decertification", in light of the district court's subsequent minute entry, dated January 12, 2007, designating the December 22 order "provisional", and its February 15, 2007 order designating the December 22 order as "final" without making any modifications to it.

2. If so, whether the district court's December 22, 2006 decision and order decertifying the class was erroneous.

¶ 9 We have jurisdiction to hear interlocutory appeals pursuant to Utah Code section 78A-3-102(3)(j) (Supp.2008).

---

5. 2000 UT 39, ¶ 18, 999 P.2d 572.

6. *Id.* ¶ 19.

7. *Houghton III*, 2005 UT 63, ¶¶ 37, 48, 125 P.3d 860.

8. *Id.* ¶ 49.

9. *Id.* ¶ 50.

## ANALYSIS

I. WE HAVE JURISDICTION TO HEAR THIS INTERLOCUTORY APPEAL BECAUSE THE PLAINTIFFS APPEALED WITHIN TWENTY DAYS OF THE DATE THAT THE COURT'S ORDER WAS SUBMITTED AND SIGNED IN COMPLIANCE WITH RULE 7(f)(2)

¶ 10 The State argues that we do not have jurisdiction over this appeal because the petition for interlocutory review was untimely. Specifically, the State argues that the Decertification Order constituted the entry of an order under rule 58A(c) of the Utah Rules of Civil Procedure and that the opportunity to file for interlocutory review expired twenty days after December 22, 2006, the date when the Decertification Order was issued.[10]

¶ 11 The State's argument fails because rule 58A(c) addresses the entry of a judgment, not the entry of an order.[11] Rule 7(f) governs court orders. "An order includes every direction of the court, including a minute order entered in writing, not included in a judgment."[12] Unlike judgments, orders are not automatically final. According to the plain language of rule 7(f)(2), following the entry of an order, "the prevailing party shall, within fifteen days after the court's decision, serve upon the other parties a proposed order in conformity with the court's decision."[13] In *Code v. Utah Department of Health*, we addressed when the time for appeal from a final order begins to run.[14] We held that "no finality will be ascribed to a memorandum decision or minute entry for purposes of triggering the running of the time for appeal" until the prevailing party prepares and submits a proposed order, unless the court explicitly directs that no order needs to be submitted.[15] Moreover, "if the court does not explicitly direct that there is

no need to submit an order and the prevailing party fails to submit an order, the appeal rights of the nonprevailing party will extend indefinitely."[16] Although *Code* addressed an appeal from a final order, not an interlocutory appeal, the same rule applies for ascribing finality to an interlocutory decision. To hold otherwise would require the parties to "engage in a guessing game to divine the court's intentions,"[17] as happened in this case. According to the plain language of rule 7(f)(2), unless the court specifically directs otherwise, the prevailing party must submit an order to the court before the time for appeal will begin running.[18]

¶ 12 In this case, the Decertification Order was a memorandum decision that Judge Quinn did not intend to be final for the purposes of interlocutory appeal. It was not a judgment. Judge Quinn did not request the State to prepare an order, nor did he explicitly state that no order was required. Furthermore, the memorandum decision itself contemplated further action by requesting additional briefing from the parties regarding the remaining motions. The minute entry on January 12, 2007, in response to the plaintiffs' confusion regarding the time for appeal, further clarified Judge Quinn's intent by stating that the Decertification Order was "not intended as a final order" because the additional motions before the court "may result in modification of the Order." Furthermore, following oral argument on the remaining issues, Judge Quinn directed the State to submit an order, and the final order explicitly stated that "the December 22, 2006 Order was not intended to be a final order until after consideration of the additional motions addressed herein." If the State intended that the time for an interlocutory appeal begin to run on December 22, the State should have submitted an order in compliance with rule 7(f)(2). Otherwise, as we not-

---

10. Utah R.App. P. 5(a) ("An appeal from an interlocutory order may be sought ... within 20 days after the entry of the order of the trial court....").

11. Utah R. Civ. P. 58A(c) ("A *judgment* is complete and shall be deemed entered for all purposes ... when the same is signed and filed ...." (emphasis added)).

12. *Id.* at 7(f)(1).

13. *Id.* at 7(f)(2).

14. 2007 UT 43, ¶ 9, 162 P.3d 1097.

15. *Id.*

16. *Id.* ¶ 6 n. 1.

17. *Id.* ¶ 5.

18. *Id.* ¶ 6.

ed in *Code*, "the appeal rights of the nonprevailing party will extend indefinitely." [19]

¶ 13 Because the plaintiffs submitted their petition within twenty days of February 15, 2007, the date that Judge Quinn signed the order prepared and submitted by the State, the plaintiffs' petition for interlocutory review is timely.

¶ 14 Having concluded that the petition is timely, we turn to the merits. The decision to grant a petition for interlocutory appeal is discretionary.[20] "The purpose ... [of] an interlocutory appeal is to get directly at and dispose of the issues as quickly as possible consistent with thoroughness and efficiency in the administration of justice." [21] We will grant interlocutory review "if it appears essential to adjudicate principles of law or procedure in advance as a necessary foundation upon which the trial may proceed; or if there is a high likelihood that the litigation can be finally disposed of on such an appeal." [22] In this case, the district court's decision to decertify the class is intimately related to its interpretation of the elements of a *McCoy* claim as articulated in *Houghton III*.[23] Proper interpretation of *Houghton III* is "a necessary foundation upon which the trial may proceed." [24] Accordingly, accepting interlocutory review promotes "the desired objective of efficiency in procedure." [25] Thus, we exercise our discretion to review the Decertification Order pursuant to rule 5 of the Utah Rules of Appellate Procedure.

## II. THE DISTRICT COURT'S DECERTIFICATION ORDER WAS BASED ON AN ERRONEOUS INTERPRETATION OF *McCOY* AND *HOUGHTON III*

¶ 15 The decision to allow a case to proceed as a class action is "within the sound discretion of the district court." [26] In this case, however, the district court decertified the class based on an interpretation of the law. "Interpreting case law presents a question of law. Accordingly, we review the district court's interpretation of our ruling in *McCoy* [and *Houghton III* ] for correctness." [27]

### A. The District Court's Conclusion That Calculating "Reasonable" Attorney Fees Required a Fact–Specific Inquiry Was Erroneous

¶ 16 In the Decertification Order, the district court properly laid out the elements for establishing a prima facie case under *McCoy*. The plaintiffs must demonstrate the following:

(1) the Plaintiff was represented by counsel in a third party liability claim, (2) the Plaintiff requested consent from the State to represent the State's Medicaid claim, (3) the State satisfied its Medicaid lien from proceeds recovered through the efforts of the Plaintiff, and (4) the State did not pay the reasonable attorney fees it was obligated to pay the Plaintiff.

¶ 17 The district court erred in interpreting the fourth element, which requires proof that the State did not pay the reasonable attorney fees it owed to the plaintiffs. The district court held that reasonable attorney fees could only be calculated within the context of the State's assumed authority to negotiate attorney fees with the attorney when (and if) it granted consent. Thus, the court concluded that in order to determine whether the fees paid by the State were reasonable, the court must place itself in the shoes of the

**19.** *Id.* ¶ 6. n. 1.

**20.** *Tyler v. Dep't of Human Servs.*, 874 P.2d 119, 120 (Utah 1994).

**21.** *Manwill v. Oyler*, 11 Utah 2d 433, 361 P.2d 177, 178 (1961).

**22.** *Id.; see also* Utah R.App. P. 5(e) ("An appeal from an interlocutory order may be granted only if it appears that the order involves substantial rights and may materially affect the final decision....").

**23.** 2005 UT 63, 125 P.3d 860.

**24.** *Manwill*, 361 P.2d at 178.

**25.** *Id.*

**26.** *Richardson v. Ariz. Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980).

**27.** *Houghton III*, 2005 UT 63, ¶ 32, 125 P.3d 860 (citation omitted).

State at the time that the recipient's attorney requested consent. The test created by the district court was a totality of the circumstances test that would take into account the fee arrangement between the recipient and his counsel and the case status at the time consent was requested. Under the second factor, the court would consider a multitude of factors that the court assumed the State would consider if it were engaging in fee negotiations:

> If the recipient requests consent near the beginning of the case when the status is the same as when the fee percentage was set, the percentage of attorney fees owed by the State would likely be the same. However, if the recipient requests consent after investigations have been completed and the merits of the case are more clear, the State's attorney fees may be lower if in fact the risk of non recovery is less. For example, as was often the case, if the recipient requested consent from the State after the recipient received an acceptable settlement offer from the third party, the State's attorney fees would be less because there was little risk of not recovering. (footnotes omitted).

This approach ignores the plain language of our earlier cases, which hold that the State must pay its "proportionate share"[28] or its "fair share"[29] of attorney fees "incurred in procuring"[30] the State's share of the proceeds.

¶ 18 In *McCoy*, we held that "the State must pay the attorney fees *incurred in procuring* the State's share of the settlement proceeds."[31] According to *Black's Law Dictionary*, the word incur means "[t]o suffer or bring on oneself (a liability or expense)."[32] Thus, the plain language of *McCoy* indicates

that the State's obligation to pay attorney fees should be calculated according to the fees that the recipient suffered or brought on herself. In other words, they should be calculated according to the attorney fee agreement between the recipient and her attorney. We have phrased the rule similarly in other cases that reference *McCoy*'s holding. For example, in *State v. Streight*, we summarized *McCoy* as holding "that the State was obligated to pay *the recipient's* attorney fees."[33]

¶ 19 We have also referred to the State's obligation to pay *"its proportionate share* of attorney fees" and a *"fair share* of attorney fees." These are the same terms used in our subrogation case law, which imposed an equitable requirement for parties to pay their "fair share" of attorney fees when exercising a right of subrogation. Before Utah passed the Utah Automobile No–Fault Insurance Act in 1973, the standard practice was for the insurer to compensate the insured for economic losses after an accident. Then, if the insured obtained recovery from a third party, the insurer would seek reimbursement from the insured's third-party recovery.[34] Although this practice became virtually obsolete in Utah with the passage of the No–Fault Insurance Act,[35] it provides a useful analogy for the case before us because the State's lien for recovering Medicaid funds mimics the right of subrogation.

¶ 20 In subrogation cases, "[t]he general rule [was] that a subrogated insurance carrier must pay its *fair share* of attorney's fees and costs if it . . . [did] nothing to assist in the prosecution of the claim."[36] Thus, we required the insurer to pay the "fair share of an attorney's fee and costs which [had] been *incurred in protecting* its interests."[37] This

---

28. *See, e.g., Houghton III*, 2005 UT 63, ¶¶ 39, 49, 125 P.3d 860.

29. *See, e.g., id.* ¶¶ 40–42, 44, 49.

30. *See, e.g., McCoy*, 2000 UT 39, ¶ 18, 999 P.2d 572.

31. *Id.* (emphasis added).

32. *Black's Law Dictionary* 782 (8th ed.2004).

33. 2004 UT 88, ¶ 11, 108 P.3d 690 (emphasis added).

34. *See Laub v. S. Cent. Utah Tel. Ass'n*, 657 P.2d 1304, 1308 (Utah 1982).

35. *Id.*

36. *Street v. Farmers Ins. Exch.*, 609 P.2d 1343, 1346 (Utah 1980) (emphasis added).

37. *Guar. Nat'l Ins. Co. v. Morris*, 611 P.2d 725, 727 (Utah 1980) (emphasis added); *see also Laub*, 657 P.2d at 1308 ("Because the reimbursement fund was procured by the insured, the insurer typically contributed a fair share of the costs and attorney's fees *incurred in obtaining* the fund." (emphasis added)).

requirement derived from the principle that "[e]quity and good conscience require that [the insurer] should not have a free ride from the plaintiff's efforts." [38] The same approach was taken by courts in various states.[39] Because these cases do not discuss the calculation of a "fair share" of fees, it appears that this language meant that the attorney fees were calculated according to the attorney fee agreement between the attorney and the insured.[40]

¶ 21 Contrary to the district court's conclusion, the term "reasonable attorney fees," [41] as used toward the end of the *McCoy* opinion, does not impose an additional fact-specific inquiry in order to calculate reasonable fees. Instead, the term "reasonable" refers to the statutorily mandated ceiling on attorney fees set out in Utah Code section 26–19–7(4).[42] Thus, under *McCoy,* even if the plaintiff agreed to a forty percent contingency fee, the State's obligation is limited to the reasonable thirty-three percent ceiling articulated in the statute.

¶ 22 Because we hold that *McCoy* requires the State to pay the same percentage of fees that the recipient paid, subject to the thirty-three percent ceiling, determining the amount of money owed by the State in each case should be a simple mathematical calculation. This is so even in the cases where the State allegedly underpaid the recipients because in those cases the plaintiffs need only show a difference between the percentage that they paid their attorney and the percentage that the State paid for its recovery. Thus, on remand, we do not anticipate the same fact intensive inquiry that convinced the district court that class certification was inappropriate.

### B. The District Court Erred in Concluding That Issues of Waiver, Estoppel, or Accord Precluded Class Certification in Cases Where the Attorneys Entered into Retainer Agreements with the State

¶ 23 The district court found an additional problem with certifying the group of plaintiffs represented by attorneys who had entered into retainer agreements with the State. Because the retainer agreements expressly set out the fee that the State would pay, the district court concluded that "[i]n every case where the State paid an attorney fee or discounted its lien, there will be issues involving estoppel, waiver, or accord." We believe that our prior cases address this issue. Most importantly, in *Houghton I,* we recognized that the representation agreements signed by the attorneys were "merely pro forma." [43] They were not bargained for agreements. "Notwithstanding the language implying a voluntary contractual relationship ... [the attorneys] were legally obligated under section 26–19–7(3) to sign agreements if they wished to represent Medicaid recipients in actions against third parties." [44]

**38.** *Street,* 609 P.2d at 1346.

**39.** *See, e.g., Commercial Standard Ins. Co. of Fort Worth, Tex. v. Combs,* 249 Ark. 533, 460 S.W.2d 770, 775 (1970) (holding that insurance company must pay its share of the forty percent contractual fee agreement between the insured and his attorneys); *Wash. Fire & Marine Ins. Co. v. Hammett,* 237 Ark. 954, 377 S.W.2d 811, 813 (1964) ("The [insurance company's] real grievance lies in having to pay a fee to an attorney not of its own choice.... But when the insurance company has benefitted from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense."); *United Servs. Auto. Ass'n v. Hills,* 172 Neb. 128, 109 N.W.2d 174, 177 (1961) ("The applicable rule is that where the holder of the subrogation right ... acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees.").

**40.** *See, e.g., Combs,* 460 S.W.2d at 775 (concluding that the insured's attorneys were "entitled to their contractual fee out of the total amount of the recovery," which was forty percent); *Hammett,* 377 S.W.2d at 813 (looking to attorney fee agreement to impose a forty percent fee, absent contention that the fee was unreasonably high).

**41.** 2000 UT 39, ¶¶ 19–20, 999 P.2d 572.

**42.** *See* Utah Code Ann. § 26–19–7(4) (1989) ("The department may not pay more than 33% of its total recovery for attorney's fees, but shall pay its proportionate share of the cost of any action in compliance with this section.").

**43.** 962 P.2d 58, 63 (Utah 1998).

**44.** *Id.* at 60.

¶ 24 Furthermore, in *McCoy* we reasoned that the statutory provision regarding attorney fees provided no basis for limiting fees to recipients to whom the State, in its discretion, granted consent.[45] We reasoned that it would be "inherently unfair" not to award fees to an attorney who had complied with the statutory requirements but had the bad luck not to receive consent from the State.[46] The same reasoning applies in this case. The practical result of the district court's approach would mean that all attorneys to whom the State granted consent would be limited to the fee negotiated by the State, but all attorneys to whom the State denied consent would receive the statutorily mandated thirty-three percent. It would be inherently unfair if the attorneys to whom the State granted consent could only recover attorney fees at the rate dictated by the State in a pro forma, unbargained-for fee agreement, while attorneys to whom the State denied consent could obtain the full percentage of their attorney fees. Moreover, in *Houghton III*, when we articulated the State's obligation to pay proportionate attorney fees, we did not distinguish between cases where the State refused consent and those in which it granted consent. In contrast, we stated that the State had an obligation to pay proportionate attorney fees "*in all cases* where the State satisfie[d] its lien from the proceeds procured through the efforts of a private attorney." [47]

¶ 25 An amendment to Utah Code section 26–19–7, adopted in 2005 to clarify the State's obligation to pay attorney fees, further supports our holding that the State's proportionate share of attorney fees is to be calculated pursuant to the same rate paid by the plaintiffs to their attorneys. The amended version reads:

> If the recipient's attorney enters into a written collection agreement with the department, or includes the department's claim in the recipient's claim or action pursuant to Subsection (4) [i.e., the department fails to respond to the consent request], the department shall pay attorney's fees at the rate of 33.3% of the department's total recovery and shall pay a proportionate share of the litigation expenses directly related to the action.[48]

Under the amended statute, the State's obligation to pay attorney fees is always the same as long as the attorney complied with the statutory requirements. According to the Office of Recovery Services itself, this amendment merely clarifies what the law has always been. On January 27, 2005, before the Senate Health and Human Services Committee, Emma Chacon, director of the Office of Recovery Services, explained that the amendment "doesn't change any of the underlying legal concepts that have been in State law since ... the 1980s." [49] She further explained, "What this bill really does ... is carve out the protocol and the procedures that the recipient, their legal counsel, and the State will follow to work together on this issue to make sure we're in compliance with the law." [50]

¶ 26 To summarize, we hold that the State's proportionate share of attorney fees is based on the percentage rate paid by the plaintiffs to their attorneys, subject to the thirty-three percent ceiling. Because the district court erroneously applied the stan-

---

45. 2000 UT 39, ¶ 18, 999 P.2d 572.

46. *Id.*

47. 2005 UT 63, ¶ 49, 125 P.3d 860 (emphasis added).

48. Utah Code Ann. § 26–19–7(2)(c)(ii) (2007).

49. *Medicaid Benefits Recovery Act Amendments: Hearing on S.B. 126 Before the H. Health & Human Servs. Comm.*, 56th Utah Leg., (Jan. 27, 2005) (Audio Recording) (statement of Emma Chacon). Ms. Chacon made a similar comment before the House Health and Human Services Committee. When explaining that the amendment changes the ceiling on attorney fees to a fixed rate, she said, "There were already provisions in the statute, but it was somewhat unclear, so we're just trying to bring more clarity to that." *Medicaid Benefits Recovery Act Amendments: Hearing on S.B. 126 Before the H. Health & Human Servs. Comm.*, 56th Utah Leg., (Feb. 11, 2005) (Audio Recording) (statement of Emma Chacon).

50. *Medicaid Benefits Recovery Act Amendments: Hearing on S.B. 126 Before the S. Health & Human Servs. Comm.*, 56th Utah Leg. (Jan. 27, 2005) (Audio Recording) (statement of Emma Chacon).

dard we announced in *Houghton III* and *McCoy*, we remand with instructions to reconsider the order decertifying the class in light of the standard we clarified today.

## III. WE DO NOT ADDRESS THE TWO ADDITIONAL "RELATED QUESTIONS" BECAUSE THEY ARE BEYOND THE SCOPE OF OUR INTERLOCUTORY REVIEW

¶ 27 The plaintiffs also ask us to address two additional legal issues. First, they ask us to articulate the appropriate class criteria under *Houghton III*. We believe that this issue has been addressed in the above holding, which clarifies the requirements for establishing a *McCoy* cause of action. Second, they ask us to address whether they are entitled to full discovery on remand. We did not grant interlocutory review on this issue, so we decline to address it.

## CONCLUSION

¶ 28 The petition for interlocutory review was timely because it was submitted within twenty days of an order prepared by the State at the request of the court in compliance with rule (7)(f)(2) of the Utah Rules of Civil Procedure. Under *McCoy* and *Houghton III*, the State is obligated to pay its proportionate share of fees incurred in procuring the State's recovery. This means that the State must pay attorney fees according to the rate in the attorney fee agreement between the plaintiff and the private attorney, subject to the reasonable statutory cap of thirty-three percent. This is true regardless of whether the State denied or granted consent. Because the Decertification Order entered by the district court was premised upon an erroneous view of the law, we vacate it and remand this matter to the district court for further proceedings consistent with this opinion.

¶ 29 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Judge GREENWOOD concur in Justice PARRISH's opinion.

¶ 30 Having disqualified himself, Justice NEHRING does not participate here; Court of Appeals Judge PAMELA T. GREENWOOD sat.

WILKINS, Justice, dissenting:

¶ 31 I respectfully dissent. Notwithstanding the clarification of how the district court is to apply the *McCoy* mandate of this court, the determination of attorney fees payable to each of the plaintiffs is an individual and fact intensive question for the district court. Even with the clear mandate of my colleagues as to how much the State is required to pay and to disregard any written agreement between the parties on the presumption that it must surely provide for more than the statutorily capped amount, I believe the district court was well within its discretionary boundaries to decertify the overall class action for purposes of calculating the individual attorney fee awards due each plaintiff given the different claims and factors at issue in each individual case. I would affirm the district court's decision, and remand for the calculations mandated by *McCoy*.