*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 43**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WASHINGTON TOWNHOMES, LLC,[1]
*Appellants,*

*v.*

WASHINGTON COUNTY WATER CONSERVANCY DISTRICT,
*Appellee.*

No. 20150258
Filed October 3, 2016

On Appeal of Interlocutory Order

Fifth District, Washington
The Honorable Jeffrey C. Wilcox
No. 111900297

Attorneys:

Craig M. Call, Kevin E. Anderson, Jonathan W. Call, Ogden,
for appellants

Jody K. Burnett, Robert C. Keller, John M. Zidow, Salt Lake City,
for appellee

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE HIMONAS,
and JUSTICE PEARCE joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    This is a putative class action aimed at challenging the
legality of certain impact fees imposed by the Washington County

---

[1] Other appellants were: HOMES BY HARMONY, INC.; COTTON
MEADOWS, LLC; SALISBURY DEVELOPMENT, LLC; SOUTHERN UTAH
HOME BUILDERS ASSOCIATION; IVORY SOUTHERN, LLC; PERRY HOMES
UTAH; and HENRY WALKER CONSTRUCTION OF SOUTHERN UTAH, LLC.

Water Conservancy District. The case was filed by a group of property owners who paid impact fees—a "water availability charge"—to the District within a specific time period. The plaintiffs claim that the impact fees run afoul of the Impact Fees Act, UTAH CODE §§ 11-36a-201 to -205, and amount to a taking under the Utah and United States Constitutions.

¶2     The District defends its impact fees by asserting that they were based on a "level of service" standard imposed on the District through a minimum source capacity standard adopted by the Utah Division of Drinking Water (DDW). The District views the DDW level of service standard as mandatory as a matter of Utah law. It claims that it is required to follow the DDW standard in planning and building its infrastructure. And it asserts that the adoption of this level of service standard is a "legislative" judgment that survives scrutiny under the Impact Fees Act and constitutional takings provisions.

¶3     The district court endorsed the District's position in a decision granting its motion for partial summary judgment. In granting that motion the court held "that the Level of Service adopted by and for the purposes of the District's 2006 Capital Facilities Plan and Impact Fee Analysis based upon a standard established by the DDW was legal and reasonable as a matter of law." Order Granting Defendant's Motion for Partial Summary Judgment and Certification Pursuant to Rule 54(b) at 2 (Feb. 12, 2015). In addition, pursuant to a stipulation of the parties, the court certified the case for an immediate appeal under Utah Rule of Civil Procedure 54(b). In so doing it concluded that "a determination of this critical threshold issue at the appellate level would be the most efficient use of judicial resources" and accordingly found "that there [was] no just reason for delay." *Id.* at 2–3.

¶4     We dismiss on jurisdictional grounds. First, we hold that the case was not properly certified under rule 54(b) because there was no "judgment as to one or more but fewer than all of the claims or parties" at issue. UTAH R. CIV. P. 54(b). Second, we consider the briefing in this case as a "petition for permission to appeal an interlocutory order," *see* UTAH R. APP. P. 5(a), but decline to exercise our discretion to grant interlocutory review.

I

¶5     As a general rule only *final* judgments are subject to an appeal. We have adopted that rule to promote "judicial economy," to "avoid[] the interminable protraction of lawsuits," and to minimize

interruption of "the business of the trial courts before they have had an opportunity to rectify some of their own possible misjudgments" at early stages of the proceedings. *Mellor v. Wasatch Crest Mut. Ins.*, 2012 UT 24, ¶ 15, 282 P.3d 981 (citation omitted).

¶6　　The general prohibition on interlocutory appeals is of course subject to exceptions. Some such appeals are "expressly authorized by statute." *Id.* ¶ 16. And others are endorsed by our rules of procedure—rule 5 of the Utah Rules of Appellate Procedure and rule 54(b) of the Utah Rules of Civil Procedure.

¶7　　This case comes to us as one certified under rule 54(b). Invoking this rule, the district court certified its decision granting the District's motion for partial summary judgment as a matter meriting an immediate appeal. It purportedly cued the case up for "a determination of [a] critical threshold issue at the appellate level" by finding that there was "no just reason for delay." Order Granting Defendant's Motion for Partial Summary Judgment and Certification Pursuant to Rule 54(b) at 2.

¶8　　We can certainly appreciate the district court's—and the parties'—interest in appellate guidance on the issues presented in this case. The statutory and constitutional standards of relevance to this dispute are less than a model of clarity. And appellate clarification of the operative legal standards could conceivably advance the ultimate disposition of this case.

¶9　　But that is not the question. Or, more accurately, it is not the only question under rule 54(b). To qualify for certification under rule 54(b), a district court decision must constitute a "judgment as to one or more but fewer than all of the claims or parties" at issue in the case. UTAH R. CIV. P. 54(b). And a "judgment" is a decision finally disposing of either an individual claim or an individual party. *See Powell v. Cannon*, 2008 UT 19, ¶ 11, 179 P.3d 799. When such a partial "judgment" is entered, then the district court may certify the case for an immediate appeal if it decides that "there is no just reason for delay." UTAH R. CIV. P. 54(b). But without a judgment disposing of a claim or a party there is no basis for certification under this rule.

¶10　　We dismiss the rule 54(b) certification on this basis. The district court's decision did not finally dispose of any claim and did not finally adjudicate the interests of a party. Instead it decided a threshold *issue* of possible relevance to the ultimate disposition of the plaintiffs' claims. And that is insufficient under rule 54(b).

¶11　　To dispose of the plaintiffs' statutory or constitutional challenges at issue, the district court would have had to enter judgment awarding (or declining to award) one of the remedies they

sought—a declaration that the impact fees imposed by the District are "null and void and of no effect," or a "damage award . . . for all damages suffered as a result of the imposition and collection of illegal Impact Fees and exactions." Complaint at 23. No such judgment was entered. The district court did not reach the question whether the impact fees imposed by the District were "null and void and of no effect," or whether plaintiffs were entitled to damages for the imposition of improper impact fees. It considered only the legality and reasonableness of the level of service standard "adopted by and for the purposes of the District's 2006 Capital Facilities Plan and Impact Fee Analysis based upon a standard established by the DDW." Order Granting Defendant's Motion for Partial Summary Judgment and Certification Pursuant to Rule 54(b) at 1–2.

¶12 The legality and reasonableness of the District's level of service standard may (or may not) be relevant to the ultimate disposition of the plaintiffs' statutory and constitutional claims. But there is no question that the district court's decision did not render a "judgment as to one or more but fewer than all of the claims or parties" at issue in the case. UTAH R. CIV. P. 54(b). And we find a lack of jurisdiction under rule 54(b) on that basis.

II

¶13 Our rules recognize appellate discretion to treat a "timely appeal from an order certified under Rule 54(b)" as "a petition for permission to appeal an interlocutory order." UTAH R. APP. P. 5(a). We may do so where the 54(b) appeal is "timely" but the certified order is "not final." *Id.* That is the case here. Plaintiffs filed a timely notice of appeal on the order certified under rule 54(b)[2] but the order is not final for reasons set forth above.

¶14 That gives us discretion to consider the briefs filed on appeal as a petition for permission to pursue an interlocutory appeal. But it does not require that we reach the merits of the interlocutory appeal. We retain the discretion to deny a petition under appellate rule 5(a)—to treat the improperly certified appeal as a petition for

---

[2] Rule 5(a) speaks of a "timely *appeal* from an order certified under Rule 54(b)." UTAH R. APP. P. 5(a) (emphasis added). The timeliness of such an appeal is measured under the standard set forth in appellate rule 4. For that reason the appeal here was timely because the notice of appeal was filed within thirty days, as required under rule 4. UTAH R. APP. P. 4(a).

interlocutory review, but to decline to grant the interlocutory appeal. And we take that route here.

¶15 An interlocutory appeal is appropriate where appellate intervention is necessary "to adjudicate principles of law or procedure in advance as a necessary foundation upon which the trial may proceed." *Houghton v. Dep't of Health*, 2008 UT 86, ¶ 14, 206 P.3d 287 (citation omitted). Where that is so, an appellate decision may promote "the desired objective of efficiency in procedure" despite the fact that it is interposed before a final judgment. *Id.* (citation omitted).

¶16 The parties to this appeal contend that the above standard is met here. They claim that our input on the reasonableness or legality of the District's "level of service" standard will advance the timely disposition of this case. And they insist, in particular, that the district court's decision implicates threshold "principles of law" that will serve as a "necessary foundation" on which further proceedings will be based.

¶17 We concede that there are important issues highlighted by the parties that will affect further proceedings in the district court. But we decline to resolve them because we find an inadequate basis for doing so on the record before us on this appeal. The parties' briefs highlight important issues, but to some degree the parties argue past each other and leave some key questions—both factual and legal—unaddressed. And the scope of the district court's decision is also a bit unclear.

¶18 A principal point of contention in the parties' briefs and at oral argument concerns the legal and practical effect of the level of service standard adopted by the DDW. The District seems to suggest that this standard was adopted *legislatively* either by the District or by the DDW—and imposed as a mandatory requirement on the District in dictating the infrastructure and facilities it is required to build in anticipation of future growth. And it insists that the legislative and mandatory nature of the standard render it reasonable as a matter of law under the Impact Fees Act and under the takings provisions of the Utah and U.S. Constitutions.

¶19 This argument seems to invoke a threshold issue under the U.S. Supreme Court's decision in *Dolan v. City of Tigard*, 512 U.S. 374 (1994). In *Dolan* the Court clarified that the takings standard the Court articulates is addressed only to impact fees that are imposed on an *adjudicative* basis. *See id.* at 384–85 (noting the longstanding "authority of state and local governments to engage in land use planning," emphasizing that such governments generally have

power to regulate in this field "without paying for every . . . change" that affects "values incident to property," but holding that "an adjudicative decision to condition petitioner's application for a building permit on an individual parcel" would be subject to a different standard); *id.* at 391 n.8 (emphasizing that the *Dolan* test applies to "an adjudicative decision to condition [an] application for a building permit on an individual parcel," while distinguishing "generally applicable zoning regulations"). Because the impact fee regime at issue here—including the level of service standard that underlies it—was purportedly adopted *legislatively*, the District may be asserting that its approach should survive scrutiny on that basis.

¶20 That is how the plaintiffs understand the District's position. They attribute to the District an assertion that the legislative adoption of the level of service standard yields for the District a "King's X" that effectively immunizes the level of service standard from review. Oral Argument at 19:20, *Washington Townhomes v. Washington Cty. Water Conservancy Dist.*, 2016 UT 34. This approach suggests that the *Dolan* standard does not control here—that plaintiffs' real beef is with the legislatively adopted DDW standard, and that such a challenge may be subject only to rational basis or reasonableness review. *See Platt v. Town of Torrey*, 949 P.2d 325, 334 (Utah 1997) (noting that "[r]ate making . . . is an inexact science" and that rates "should not be disturbed if there is any reasonable basis for [an agency's] determination" (omission in original) (citation omitted)). Yet it is unclear whether this is the District's position. At oral argument the District seemed to disavow the "King's X" position. Oral Argument at 31:00.

¶21 The District advances an alternative argument that assumes the applicability of the *Dolan* standard. Because it views itself legally bound to build infrastructure and facilities as dictated by the DDW level of service standard, the District insists that this standard is by definition a precise, accurate measure of the *impact* of new development *on the District*—and thus one that would survive under *Dolan*. Thus, the District rejects the plaintiffs' assertion that it is somehow bound to assess the level of impact of new development on the basis of actual water usage. It claims that such usage data is beside the point as a legal matter—that the District is bound to follow the DDW standard, and thus that plaintiffs cannot establish that the governing "level of service can or should be limited to the 'measure of demand that [a] new home will impose,' rather than take into account the systematic components required for a safe and

reliable public water supply system and which are part of the 'state standard of demand'" imposed by DDW. Appellee's Brief at 35.

¶22 The plaintiffs disagree—at least to some extent. At oral argument and in one or two places in their briefs, the plaintiffs seem to concede that the District was legally bound (in the absence of an exception from DDW) to build infrastructure and facilities in reliance on the DDW level of service standard. *See* Oral Argument at 9:11 (acknowledging that DDW is required to follow the state standards in designing their facilities). Yet they nonetheless proceed to challenge that standard *as a basis for the calculation of an impact fee*—asserting that the DDW "requirements were never intended to be used for calculating impact fees," and insisting that a reasonable level of service standard would be based on evidence of actual water usage rather than the DDW's historical standard. Such a standard, in plaintiffs' view, would have to be based on actual usage data in order to be reasonable. And because the District has not established that its level of service standard is consistent with such data, the plaintiffs challenge the district court's dismissal of their claim on summary judgment.

¶23 Plaintiffs also challenge the premise that a *legislatively* adopted impact fee would not be subject to heightened review under *Dolan*. They claim that this is a "distinction without a constitutional difference." Oral Argument at 12:03 (citing *Parking Ass'n of Ga. v. City of Atlanta*, 515 U.S. 1116, 1117–18 (1995) (Thomas, J., dissenting from denial of certiorari)). Alternatively, the plaintiffs argue that the District's decision should be considered *adjudicative* rather than *legislative*. And they accordingly insist that the *Dolan* standard applies, and that their case is a challenge to the District's impact fee analysis and not to the underlying DDW level of service standard.

¶24 The briefing on these and other issues has highlighted "principles of law" that may provide "a necessary foundation upon which the trial may proceed." *Houghton*, 2008 UT 86, ¶ 14 (citation omitted). If the level of service standard was *legislatively* adopted, then in the District's view the impact fee regime escapes scrutiny under *Dolan* (and is subject only to rational basis scrutiny). *See Dolan*, 512 U.S. at 384–85 ("A land use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.'" (alterations in original) (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980))). Yet the plaintiffs offer a contrary view. And the parties' disagreement appears to implicate a matter of substantial significance in this litigation, as it may dictate whether plaintiffs are entitled to *Dolan* review of the District's impact fee regime, or

whether they are left only with a rational basis challenge (in a separate suit) to the DDW's level of service standard.

¶25    The parties have also identified a key threshold question of factual (or perhaps *practical*) significance—as to whether the District was legally required to build infrastructure and facilities in accordance with the DDW level of service standards. If so, the District may have a point that its impact fee regime should survive even under *Dolan*. The impact *on the District*, after all, could hardly be more precisely measured than by an assessment of the infrastructure and facilities it is required to build as a result of new development. So if the District is right about the binding nature of the DDW standards, then it may well be right to suggest that the plaintiffs' beef is ultimately with the DDW's standard, and not with the District's impact fee regime.

¶26    That said, we cannot render a conclusive judgment on these or other issues presented on this appeal. The threshold question of whether the District's impact fee regime was *legislatively* adopted is a difficult one. And this is an issue on which we would need more extensive briefing than was presented on this appeal.[3] To resolve this

---

[3] The difficulty in answering this question stems in part from the Supreme Court's lack of clear guidance. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2608 (2013) *(*Kagan, J., dissenting) (noting that a rule "adopted in several States" is that "*Nollan* and *Dolan* apply only to permitting fees that are imposed ad hoc, and not to fees that are generally applicable"); *Ehrlich v. City of Culver City*, 911 P.2d 429, 444 (Cal. 1996) (explaining that "the heightened standard of judicial scrutiny of *Nollan* and *Dolan* is triggered" only by exactions which are imposed "on an individual and discretionary basis" rather than "generally [or] ministerially"). *But see Parking Ass'n of Ga. v. City of Atlanta*, 515 U.S. 1116, 1117–18 (1995) (Thomas, J., dissenting from denial of certiorari) ("It is not clear why the existence of a taking should turn on the type of governmental entity responsible for the taking. A city council can take property just as well as a planning commission can. . . . The distinction between sweeping legislative takings and particularized administrative takings appears to be a distinction without a constitutional difference."); *Dakota, Minn. & E. R.R. Corp. v. S. Dakota*, 236 F. Supp. 2d 989, 1026 (D.S.D. 2002) (concluding that *Dolan* applied to legislative exactions and that a legislative enactment "may make it more difficult for the State to satisfy the essential nexus test

(continued…)

and other issues, moreover, the district court may have to wade into factual questions that cannot be resolved on the current record. The record on appeal does not spell out the details as to how the impact fee is calculated, or how the level of service standard may affect that analysis.

¶27 The question of the binding nature of the DDW standard, for example, is a matter of some difficulty. We cannot tell from the record—or the briefing and argument on appeal—whether or to what extent the District was bound to follow the DDW standard in its construction of infrastructure and facilities necessitated by new development. The district court's order is likewise unclear on this point. As noted above, the court concluded that the "Level of Service . . . was legal and reasonable as a matter of law." *Order Granting Defendant's Motion for Partial Summary Judgment and Certification Pursuant to Rule 54(b)* at 2 (Feb. 12, 2015). But it also made reference to "the District's 2006 Capital Facilities Plan and Impact Fee Analysis" being "based upon a standard established by the DDW," and it concluded that the adoption of that standard was a "reasonable" act presenting a "legal question that does not require any resolution of disputed facts." *Id*. Because that question is a significant one that finds no clear answer in the parties' briefs or in the district court's decision, we find it imprudent for us to step into this case at this stage on an interlocutory basis.

¶28 For these reasons we dismiss this case on jurisdictional grounds rather than rendering an opinion on the merits of the issues presented for our review. We do so recognizing that there are important threshold questions presented that may provide a "necessary foundation upon which the trial may proceed." *Houghton*, 2008 UT 86, ¶ 14 (citation omitted). But we conclude that those issues are insufficiently presented on the briefs and record on appeal, and accordingly remand for further proceedings in the district court.

––––––––––––

employed in regulatory takings cases because it may not have made the necessary level of individualized findings"), *aff'd in part, vacated in part, remanded sub nom. Dakota, Minnesota & E. R.R. Corp. v. S. Dakota*, 362 F.3d 512 (8th Cir. 2004).